UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| THE UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 22-00205 |
| ) | |
| WANXIANG AMERICA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

The United States, through its undersigned attorneys, hereby brings this civil action against defendant, Wanxiang America Corporation (Wanxiang), and alleges the following:

1. This action is brought by the United States to recover unpaid duties and to collect an outstanding monetary penalty pursuant to 19 U.S.C. § 1592, and to collect mandatory interest pursuant to 19 U.S.C. § 1505.

## JURISDICTION

2. The Court possesses jurisdiction to entertain this action under 28 U.S.C. § 1582.

3. At all times relevant to the matters described in this complaint, and upon information and belief, Wanxiang was incorporated in the State of Kentucky and its principal place of business was at 88 Airport Road, Elgin, Illinois, 60123. Wanxiang's registered agent is Corporation Service Company, located at 421 West Main Street, Frankfort, KY 40601.

4. On or about April 11, 2019, U.S. Customs and Border Protection (CBP) issued to Wanxiang a demand for payment of lost revenue pursuant to 19 U.S.C. § 1592(d) and a penalty pursuant to 19 U.S.C. § 1592.

5. This action is timely under 19 U.S.C. § 1621 because Wanxiang executed a waiver of any statute of limitations defense for any action filed on or before July 16, 2022.

FACTS

6. At all times relevant to the matters described in this complaint, and upon information and belief, Wanxiang was a subsidiary of its foreign parent company, Wanxiang Group Corporation (Wanxiang Group), a multinational automotive components manufacturing company located in Xiaoshan City, Zhejiang Province, People's Republic of China (China).

7. At all times relevant to the matters described in this complaint, and upon information and belief, Wanxiang was an importer of goods from Wanxiang Group and was also involved in the automotive and industrial markets in the United States.

8. This action involves Wanxiang's importations of universal joints and parts thereof (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits), wheel hub assemblies incorporating radial ball and tapered roller bearings, radial ball bearings, tapered roller bearings, and other parts and accessories of automobiles (including axle, cage for double offset joint of constant velocity axle (CV), race for CV axle used in utility vehicle, CV-joint part, tube assembly, and steering shaft for combine) into the United States.

9. Wanxiang entered the merchandise described in paragraph 8, above, into the commerce of the United States during the period from October 1, 2007, to September 30, 2012, by means of materially false statements or omissions in violation of 19 U.S.C. § 1592.

Reasonable Care And Required Entry Documentation Or Information

10. Every importer of record must exercise reasonable care in entering merchandise into the United States. *See* 19 U.S.C. § 1484(a)(1).

11. When entering merchandise into the United States, importers must file with CBP "such documentation or, pursuant to an authorized electronic data interchange system, such information as is necessary to enable [CBP] to determine whether the merchandise may be released from custody." 19 U.S.C. § 1484(a)(1)(A).

12. An importer must certify all entries to be "true and correct to the best of his knowledge and belief" and each "entry shall set forth such facts in regard to the importation as the Secretary may require and shall be accompanied by such invoices, bills of lading, certificates, and documents, or their electronically submitted equivalents, as are required by regulation." 19 U.S.C. § 1484(d)(1).

13. CBP's regulations set forth the required content of what is commonly called an "entry packet," which includes the "entry summary" or "CBP Form 7501." 19 C.F.R. § 142.3. At the time of entry, importers must also file "evidence of the right to make entry," a "commercial invoice," and a "packing list." 19 C.F.R. § 142.3(b)(1).

14. "The entry summary filed for merchandise subject to an antidumping or countervailing duty order shall include the unique identifying number assigned by the Department of Commerce [(Commerce).]" 19 C.F.R. § 141.61(c).

The Tapered Roller Bearing Antidumping Duty Order

15. From September 15, 1986 through February 2, 1987, Commerce conducted an antidumping duty investigation concerning tapered roller bearings and parts thereof, finished or unfinished (tapered roller bearings), from China. *See Tapered Roller Bearings, Rollers and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Initiation of Antidumping Duty Investigation*, 51 Fed. Reg. 33,283 (Dep't of Commerce Sep. 19, 1986); *Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Preliminary Determination of Sales at Less Than Fair Value*, 52 Fed. Reg. 3,833 (Dep't of Commerce Feb. 6, 1987).

16. The investigation covered tapered roller bearings and parts thereof; flange, take-up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for

automotive use.  *Tapered Roller Bearings From The People's Republic of China; Final Determination of Sales at Less Than Fair Value*, 52 Fed. Reg. 19,748 (Dep't of Commerce May 27, 1987).

17. Commerce's final determination resulted in an antidumping duty order covering tapered roller bearings from China.  *See Antidumping Duty Order*, 52 Fed. Reg. 22,667 (Dep't of Commerce June 15, 1987) (TRB Order).  The antidumping case number assigned to the TRB Order is A-570-601.

18. Wheel hub assemblies that incorporate tapered roller bearings and parts thereof (wheel hub assemblies) are within the scope of the TRB Order.

19. During the relevant period, from October 1, 2007 to September 30, 2012, and with the exception of specifically identified Chinese producers and exporters, the cash deposit and liquidation rate for goods covered by the TRB Order was 92.84 percent.

Wanxiang's Wheel Hub Assemblies

20. On and between October 1, 2007, and September 30, 2012, Wanxiang entered wheel hub assemblies exported by Wanxiang Qianchao Company Limited (Wanxiang Q) into the United States under cover of the entries identified on Attachment A.

21. The wheel hub assemblies exported from China by Wanxiang Q and entered by Wanxiang under cover of the entries identified on Attachment A were covered by the TRB Order and were subject to the "all others" deposit and liquidation rate of 92.84 percent.

22. Wanxiang failed to deposit antidumping duties for wheel hub assemblies it entered under cover of the entries identified on Attachment A, and which were exported from China by Wanxiang Q.

23. Wanxiang falsely identified the wheel hub assemblies on the entry summary corresponding to the entries identified on Attachment A as "01" consumption entries and,

4

because wheel hub assemblies were covered by the TRB Order, such entries should have been identified as "03" antidumping entries.

24. Wanxiang failed to include the antidumping case number, A-570-601, on the entry summary corresponding to the entries of wheel hub assemblies identified on Attachment A that were exported from China by Wanxiang Q.

25. Wanxiang's failure to deposit antidumping duties for the entries of wheel hub assemblies entered under cover of the entries identified on Attachment A and exported by Wanxiang Q resulted in an actual loss of antidumping duties of $26,939,985.31.

26. Wanxiang also misclassified the wheel hub assemblies entered under cover of the entries identified on Attachment A as automobile parts under Harmonized Tariff Schedule of the United States (HTSUS) heading 8708, in either subheading 8708.99.6890 or subheading 8708.99.8180, at a duty rate of 2.5 percent *ad valorem*.

27. The misclassifications, false identification of the entries as "01" consumption entries, and omission of the antidumping case number on the entry summary are material because they had the potential to influence CBP's assessment of antidumping duties.

28. The misclassifications and failure to identify entries of wheel hub assemblies as being covered by the TRB Order resulted in an actual loss of revenue of $26,939,985.31.

Radial Ball And Tapered Roller Bearing Entries

29. On and between October 1, 2007, and September 30, 2012, Wanxiang entered radial ball bearings and tapered roller bearings into the United States under cover of the entries identified on Attachment A.

30. Wanxiang misclassified the radial ball and tapered roller bearings entered under cover of the entries identified on Attachment A under HTSUS heading 8708, in either subheading 8708.99.6890 or subheading 8708.99.8180, at a duty rate of 2.5 percent *ad valorem*.

31. The radial ball bearings and tapered roller bearings that Wanxiang entered under cover of the entries identified on Attachment A are properly classifiable under HTSUS heading 8482, which covers "Ball or roller bearings," and are specifically described by subheading 8482.10.5016 at a duty rate of 9 percent *ad valorem*, subheading 8482.10.5068 at a duty rate of 9 percent *ad valorem*, subheading 8482.20.0080 at a duty rate of 5.8 percent *ad valorem*, and subheading 8482.99.0500 at a duty rate of 9.9 percent *ad valorem*.

32. The misclassifications of individual radial ball or tapered roller bearings were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics.

33. The misclassification of individual radial ball and tapered roller bearings resulted in an actual loss of revenue of $602,102.32.

Universal Joints And Parts Of Universal Joints

34. On and between October 1, 2007, and September 30, 2012, Wanxiang entered universal joints and parts and accessories of universal joints (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits) into the United States under cover of the entries identified on Attachment A.

35. Wanxiang misclassified the universal joints and parts and accessories of universal joints entered under cover of the entries identified on Exhibit A under several HTSUS headings: (1) Heading 8708, in subheading 8708.94.7510 at a duty rate of 2.5 percent *ad valorem*, subheading 8708.99.1600 duty free, and subheading 8708.99.6890 at a duty rate of 2.5 percent *ad valorem*; (2) Heading 8709, in subheading 8709.90.0000 as duty free; and Heading 8483, in subheadings 8483.10.5000, 8483.90.0030, and 8483.90.0080, all duty free.

36. On July 1, 2009, CBP informed Wanxiang by way of a CBP Form 29, Notice of Action, that Wanxiang had misclassified crosses and steering yokes in entry number BZF-

6

60075095, under HTSUS subheading 8432.90.0080 as duty free, and also advised Wanxiang that the correct tariff classification of crosses and steering yokes is under HTSUS subheading 8483.90.8040 at a duty rate of 2.8 percent *ad valorem*.

37. Following the July 1, 2009 Notice of Action, Wanxiang continued to misclassify universal joints and parts and accessories of universal joints (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits) into the United States under cover of the entries identified on Attachment A under subheading 8708.94.7510 at a duty rate of 2.5 percent *ad valorem*, subheading 8708.99.1600 duty free, subheading 8708.99.6890 at a duty rate of 2.5 percent *ad valorem*, subheading 8709.90.0000 duty free, and subheadings 8483.10.5000, 8483.90.0030, and 8483.90.0080, all duty free.

38. Wanxiang's misclassifications of universal joints and parts and accessories of universal joints (including crosses and yokes) were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics.

39. The misclassification of universal joints and parts and accessories of universal joints (including crosses and yokes) entered before July 1, 2009, resulted in an actual loss of revenue of $1,684,404.16.

40. The misclassification of universal joints and parts and accessories of universal joints (including crosses and yokes) entered after July 1, 2009, resulted in an actual loss of revenue of $1,889,419.23.

Misclassification Of Universal Joints As Parts of Agricultural Machines

41. Wanxiang entered universal joints into the United States under cover of the entries identified on Attachment A.

42. Wanxiang falsely claimed the universal joints were eligible for duty-free treatment as parts of agricultural machines under HTSUS Heading 9817, subheading 9817.00.6000, an actual use provision that is subject to the requirements of 19 C.F.R. §§ 10.133 - 10.139.

43. Wanxiang was aware of the requirements of 19 C.F.R. §§ 10.133 - 10.139 when it entered the universal joints as parts of agricultural machines into the United States under cover of the entries identified on Attachment A.

44. Wanxiang's false claim that universal joints were eligible for duty free treatment as parts of agricultural machines under HTSUS subheading 9817.00.6000 was material because it had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics.

45. Wanxiang's false claim for duty-free treatment of the universal joints as parts of agricultural machines resulted in an actual loss of revenue of $20,755.15.

Miscellaneous Parts And Accessories

46. Wanxiang entered miscellaneous parts and accessories (including Axle, CAGE FOR DOJ (Double Offset Joint) OF CV (Constant Velocity) AXLE, RACE FOR CV AXLE USE IN UTILITY VEHICLE, CV-JOINT PART, REV. 06 TUBE ASSEMBLY, STEERING SHAFT FOR COMBINE) into the United States under cover of the entries identified on Attachment A.

47. Wanxiang misclassified these miscellaneous parts and accessories under several HTSUS subheadings, including subheadings 8432.90.0080, 8708.99.1600, and 8709.90.0000, all duty-free tariff provisions. *See* Attachment A.

48. These miscellaneous parts and accessories were properly classifiable under HTSUS subheading 8483.90.8010 at a duty rate of 2.8 percent *ad valorem*, subheading

8708.50.5110 at a duty rate of 2.5 percent *ad valorem*, or subheading 8708.99.6890 at a duty rate of 2.5 percent *ad valorem*.

49. Wanxiang's misclassifications of miscellaneous parts and accessories were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics.

50. The misclassification of these miscellaneous parts and accessories resulted in an actual loss of revenue of $48,542.94.

Administrative Proceedings

51. On January 17, 2018, CBP issued a pre-penalty notice that advised Wanxiang that CBP was contemplating issuing a demand for duties in the amount of $35,973,268.39 and a penalty in the amount of $77,157,756.08 for violation of 19 U.S.C. § 1592.

52. Wanxiang responded to the pre-penalty notice on June 27, 2018.

53. On April 11, 2019, CBP issued a notice to Wanxiang assessing a penalty in the amount of $66,190,766.98 for multiple negligent and grossly negligent violations of 19 U.S.C. § 1592, and demanding payment of $31,185,209.11 in lost revenue.

54. All administrative notices and demands for payment issued by CBP were processed in accordance with applicable laws and procedures and CBP processed all petitions for mitigation.

55. Neither Wanxiang nor any other entity has paid any part of the duties and penalty the United States seeks in this action.

56. The domestic value of the merchandise is $281,133,517.40.

COUNT ONE

57. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

58. As a result of Wanxiang's entry of the merchandise described above by means of material false statements and omissions in violation of 19 U.S.C. § 1592(a), Wanxiang America owes the United States, pursuant to 19 U.S.C. § 1592(d), unpaid customs and antidumping duties, taxes or fees (lost revenue) in the amount of $31,185,209.11.  *See* Attachment A.

59. CBP demanded payment of $31,185,209.11 in lost revenue; however, to date, neither Wanxiang nor any other person has paid any amount of the lost revenue.

## COUNT TWO

60. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

61. Wanxiang negligently violated 19 U.S.C. § 1592, and did not exercise reasonable care, when it made material false statements and omissions in connection with its entries of wheel hub assemblies covered by the TRB Order.

62. Wanxiang is liable to the United States for a penalty for negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $53,879,970.62, which amount represents two times the total loss of antidumping duties of $26,939,985.31 for the wheel hub assemblies.

## COUNT THREE

63. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

64. Wanxiang negligently violated 19 U.S.C. § 1592, and did not exercise reasonable care, when it made material false statements and omissions in connection with its entries of radial ball bearings and tapered roller bearings.

65. Wanxiang is liable to the United States for a penalty for negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $1,204,204.64, which amount represents two times the total loss of duties of $602,102.32 for the radial ball bearings and tapered roller bearings.

## COUNT FOUR

66. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

67. Wanxiang negligently violated 19 U.S.C. § 1592, and did not exercise reasonable care, when it made material false statements and omissions in connection with its entries of universal joints and parts and accessories of universal joints entered on and between October 1, 2007, and July 1, 2009.

68. Wanxiang is liable to the United States for a penalty for negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $3,368,808.32, which amount represents two times the total loss of duties of $1,684,404.16 for the universal joints and parts and accessories of universal joints entered on and between October 1, 2007, and July 1, 2009.

## COUNT FIVE

69. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

70. Wanxiang committed grossly negligent violations of 19 U.S.C. § 1592 through wanton disregard for the relevant facts and indifference to or disregard for statutory obligations when it made material false statements and omissions in connection with its entries of universal joints and parts and accessories of universal joints entered after July 1, 2009, and until September 30, 2012.

71. Wanxiang is liable to the United States for a penalty for gross negligence, pursuant to 19 U.S.C. § 1592(c)(2), in the amount of $7,557,676.92, which amount represents four times the total loss of revenue of $1,889,419.23 for the universal joints and parts and accessories of universal joints entered after July 1, 2009, and until September 30, 2012.

COUNT SIX

72.     The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

73.     Alternatively, if Wanxiang's misclassifications of universal joints and parts and accessories of universal joints entered after July 1, 2009, and until September 30, 2012, were not the result of gross negligence, they were the result of Wanxiang's negligent violations of 19 U.S.C. § 1592, and failure to exercise reasonable care.

74.     Wanxiang is liable to the United States for a penalty for negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $3,778,838.46, which amount represents two times the total loss of revenue of $1,889,419.23 for the universal joints and parts and accessories of universal joints entered after July 1, 2009.

COUNT SEVEN

75.     The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

76.     Wanxiang committed grossly negligent violations of 19 U.S.C. § 1592 through wanton disregard for the relevant facts and indifference to or disregard for statutory obligations when it made material false statements and omissions in connection with its entries of universal joints under a duty-free actual use provision for agriculture machine parts.

77.     Wanxiang is liable to the United States for a penalty for gross negligence, pursuant to 19 U.S.C. § 1592(c)(2), in the amount of $83,020.60, which amount represents four times the total loss of revenue of $20,755.15 for the agriculture machine parts.

COUNT EIGHT

78.     The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

79. Alternatively, if Wanxiang's material false statements and omissions in connection with its entries of universal joints under a duty-free actual use provision for agricultural machine parts were not the result of gross negligence, they were the result of Wanxiang's negligent violations of 19 U.S.C. § 1592, and failure to exercise reasonable care.

80. Wanxiang is liable to the United States for a penalty for gross negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $41,510.30, which amount represents two times the total loss of revenue of $20,755.15 for the agriculture machine parts.

## COUNT NINE

81. The allegations contained in paragraphs 1 through 56 are restated and incorporated herein by reference.

82. Wanxiang negligently violated 19 U.S.C. § 1592, and did not exercise reasonable care, when it made material false statements and omissions in connection with its entries of miscellaneous parts and accessories.

83. Wanxiang is liable to the United States for a penalty for negligence, pursuant to 19 U.S.C. § 1592(c)(3), in the amount of $97,085.88, which amount represents two times the total loss of revenue of $48,542.94 for the miscellaneous parts and accessories.

WHEREFORE, the United States respectfully requests that the Court:

(a) Enter judgment for the United States against Wanxiang for unpaid duties, taxes and fees (lost revenue) pursuant to 19 U.S.C. § 1592(d) in the amount of $31,185,209.11, plus pre-judgment interest pursuant to 19 U.S.C. 1505; and

(b) Enter judgment for the United States against Wanxiang for a penalty in the amount of $66,190,766.98, plus interest, for negligent and grossly negligent violations of 19 U.S.C. § 1592(a); and

(c) Alternatively, absent judgment on Counts Five and Seven for grossly negligent violations of 19 U.S.C. § 1592(a), enter judgment for the United States against Wanxiang for a penalty in the amount of $62,370,418.22, plus interest, for negligent violations of 19 U.S.C. § 1592(a); and

(d) Grant the United States such other relief as the Court deems appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Mikki Cottet
MIKKI COTTET
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC  20044
Telephone: 202-307-0962
Facsimile: 202-514-7965
E-mail: Mikki.Cottet@usdoj.gov

*OF COUNSEL*:

STEVEN J. HOLTKAMP
Office of Associate Chief Counsel
U.S. Customs and Border Protection
610 S. Canal St., Ste. 767
Chicago, IL 60607

July 13, 2022

Attorneys for Plaintiff, United States