IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| THE UNITED STATES,　　　　　　　　） | |
| 　　　　　　）　 | |
| 　　　Plaintiff,　　　　） | |
| 　　　　　） | |
| 　　　v.　　　　　） | Court No. 22-00205 |
| 　　　　　） | |
| WANXIANG AMERICA CORPORATION,　） | |
| 　　　　　） | |
| 　　　Defendant.　　　　） | |
| 　　　　　） | |

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

MIKKI COTTET
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC  20044
Telephone: 202-307-0962
Facsimile: 202-514-7965
E-mail: Mikki.Cottet@usdoj.gov

*OF COUNSEL*:

STEVEN J. HOLTKAMP
Office of Associate Chief Counsel
U.S. Customs and Border Protection
610 S. Canal St., Ste. 767
Chicago, IL 60607

December 21, 2022

Attorneys for Plaintiff, United States

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 1

ARGUMENT ........................................................................................................................... 6

I.    Standard Of Review .................................................................................................... 6

II.    The Complaint Pleads Factual Content That Allows The Court To Draw The Reasonable Inference That Wanxiang Is Liable For The Violations Of 19 U.S.C. § 1592 ..................................................................................................................... 7

    A.   The Complaint States A Claim For Relief That Is Plausible On Its Face For Each Of Wanxiang's Alleged Negligent Violations Of 19 U.S.C. § 1592 .......... 8

    B.   The Complaint States A Claim For Relief That Is Plausible On Its Face For Each Of Wanxiang's Grossly Negligent Violations Of 19 U.S.C. § 1592 .......... 12

III.    Wanxiang's Arguments Should Be Rejected ............................................................. 14

    A.   Wanxiang Has Not Demonstrated That The Complaint Fails To State A Claim That It Negligently Entered WHA Covered By The TRB Order ......................... 15

        1.   Information Available To The Public Since 1987 Shows That WHA Incorporating Tapered Roller Bearings Were Considered Within The Scope Of The TRB Order .................................................................................. 16

        2.   Commerce's Regulation At 19 C.F.R. § 351.225 Is Irrelevant To The Issues Underlying This Penalty Action ................................................................. 22

        3.   Wanxiang's Assertion That It Should Have Been On The Scope Service List Is Wrong ................................................................................................. 27

    B.   Misclassifications Constitute False Statements Under The Penalty Statute ........ 29

    C.   The Allegation That Wanxiang Failed To Comply With The Notice Of Action Is Sufficient To Establish Gross Negligence At The Pleading Stage ....... 31

CONCLUSION ....................................................................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*AMS Assocs., Inc. v. United States*,
  737 F.3d 1338 (Fed. Cir. 2013) ............................................................................ 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6, 7

*Cedars–Sinai Med. Ctr. v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993) ............................................................................ 7

*Dimare Fresh, Inc. v. United States*,
  808 F.3d 1301 (Fed. Cir. 2015) .......................................................................... 7

*Exergen Corp. v. Wal-Mart Stores, Inc. and S.A.A.T.*,
  575 F.3d 1312 (Fed. Cir. 2009) ........................................................................ 14

*Franklin v. United States*,
  289 F.3d 753 (Fed. Cir. 2002) .......................................................................... 30

*Leider v. United States*,
  301 F.3d 1290 (Fed. Cir. 2002) .......................................................................... 7

*Mitsubishi Elecs. Am., Inc. v. United States*,
  882 F. Supp. 171 (Ct. Int'l Trade 1995) ...................................................... 33, 34

*N. Am. Processing Co. v. United States*,
  236 F.3d 695 (Fed.Cir.2001) ............................................................................ 30

*Power Train Components, Inc. v. United States*,
  911 F. Supp. 2d 1338 (Ct. Int'l Trade 2013),
  *aff'd mem.*, 565 F. App'x 899 (Fed. Cir. 2014) ............................................ *passim*

*Rollerblade, Inc. v. United States*,
  112 F.3d 481 (Fed.Cir.1997) ............................................................................ 30

*Sunpreme Inc. v. United States*,
  892 F.3d 1186 (Fed. Cir. 2018) .................................................................. 17, 18

*Sunpreme Inc. v. United States,*
  946 F.3d 1300 (Fed. Cir. 2020) ....................................................................... *passim*

*Suntec Indus. Co. v. United States,*
    951 F. Supp. 2d 1341 (Ct. Int'l Trade 2013) ............................................................. 28

*Tai-Ao Aluminum (Taishan) Co. v. United States,*
    983 F.3d 487 (Fed. Cir. 2020) .............................................................. 21, 22, 25

*Trans Tex. Tire, LLC v. United States,*
    519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021) ................................................. *passim*

*United States v. Cruzin Cooler, LLC,*
    459 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) ............................................................. 29

*United States v. Ford Motor Co.,*
    395 F.Supp.2d 1190 (Ct. Int'l Trade 2005), *aff'd in part and remanded*, 463 F.3d 1267 (Fed.
    Cir. 2006) ......................................................................................................... 8, 12

*United States v. Great Neck Saw Mfr.,*
    311 F. Supp. 3d 1337 (Ct. Int'l Trade 2018) ....................................................... 8, 11, 14

*United States v. Greenlight Organic, Inc.,*
    466 F. Supp. 3d 1260 (Ct. Int'l Trade 2020) ........................................................... 7, 21

*United States v. Horizon Prods. Int'l, Inc.,*
    229 F. Supp. 3d 1370 (Ct. Int'l Trade 2017) ............................................................. 21

*United States v. Int'l Custom Prods.,*
    549 F. Supp. 2d 1384 (Ct. Int'l Trade 2008) ............................................................. 32

*United States v. Int'l Trading Servs., LLC,*
    190 F. Supp. 3d 1263 (2016) ............................................................................ 8, 14

*United States v. Int'l Trading Servs., LLC,*
    222 F. Supp. 3d 1325 (Ct. Int'l Trade 2017) ............................................................. 29

*United States v. Maverick Mktg., LLC,*
    295 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) ........................................................... 8, 14

*United States v. New-Form Mfg. Co., Ltd.,*
    277 F. Supp. 2d 1313 (Ct. Int'l Trade 2003) ............................................................. 32

*United States v. Nitek Elecs., Inc.,*
    844 F. Supp. 2d 1298 (Fed. Cir. 2012), *aff'd by United States v. Nitek Elecs, Inc.*, 806 F. 3d
    1376 (Fed. Cir. 2015) ................................................................................... 7, 14

*United States v. Optrex Am., Inc.,*
    560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) ............................................................. 30

*United States v. Priscilla Modes, Inc.,*
  9 C.I.T. 598 (1985) ........................................................................................ 8, 14

*United States v. Rotek Inc.,*
  22 C.I.T. 503 (1998) ...................................................................................... 8, 14

*United States v. Six Star Wholesale, Inc.,*
  359 F. Supp. 3d 1314 (Ct. Int'l Trade 2019) ...................................................... 30

*United States v. Sterling Footwear, Inc.,*
  279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017) ........................................... 30, 32, 33

*United States v. Thirty-One Boxes,*
  Case no. 16,465a, 28 F. Cas. 56 (S.D.N.Y. 1833) ............................................. 34

*United States v. Valley Steel Prods Co.,*
  12 C.I.T. 1161 (1988) .................................................................................. 8, 14

*United Steel & Fasteners, Inc. v. United States,*
  203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017), *aff'd*, 947 F.3d 794 (Fed. Cir. 2020)..... 21, 22, 26

*Wanxiang America Corp. v. United States,*
  399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019), *aff'd*, 12 F.4th 1369 (Fed. Cir. 2021).......... *passim*

*Wanxiang America Corp. v. United States,*
  12 F.4th 1369 (Fed. Cir. 2021) ................................................................ *passim*

**Statutes**

19 U.S.C. § 1484(a)(1) ...................................................................................... 9, 29

19 U.S.C. § 1484(d)(1) ...................................................................................... 9

19 U.S.C. § 1500(c) .......................................................................................... 19

19 U.S.C. § 1592 ........................................................................................ *passim*

19 U.S.C. § 1592(a) ..................................................................................... *passim*

19 U.S.C. § 1592(e) .......................................................................................... 14

19 U.S.C. § 1625(c) .......................................................................................... 32

19 U.S.C. § 1675 .............................................................................................. 10

28 U.S.C. 1581(i)(2) ................................................................................................. 6

44 U.S.C. § 1507 ...................................................................................................... 17

**Rules**

U.S. Ct. Int'l Trade R. 8(a) ....................................................................................... 12

U.S. Ct. Int'l Trade R. 8(e) ....................................................................................... 12

U.S. Ct. Int'l Trade R. 8(f) ........................................................................................ 12

U.S. Ct. Int'l Trade R. 12(b) ................................................................................ *passim*

U.S. Ct. Int'l Trade R. 1581(i) .................................................................................. 17

**Regulations**

19 C.F.R. §§ 10.133 - 10.139 ................................................................................... 13

19 C.F.R. § 351.225(l)(3) .......................................................................................... 19

19 C.F.R. § 141.61(c) .................................................................................................. 9

19 C.F.R. § 142.3 ........................................................................................................ 9

19 C.F.R. § 142.3(b)(1) ............................................................................................... 9

19 C.F.R. § 171, App. B(C)(2) .............................................................................. 8, 12

19 C.F.R. § 351.225 ...................................................................................... 21, 24, 26p

19 C.F.R. § 351.225(d) .............................................................................................. 22

19 C.F.R. § 351.22(k) ............................................................................................... 26

19 C.F.R. § 351.225(l) ......................................................................................... 22, 25

**Federal Registar**

62 Fed. Reg. 61276 (Dep't of Commerce Nov. 17, 1997)............................................................ 28

75 Fed. Reg. 52311 (Dep't of Commerce Aug. 25, 2010)...................................................... 24, 25

75 Fed. Reg. 79339 (Dep't of Commerce Dec. 20, 2010) ........................................................... 24

76 Fed. Reg. 10558 (Dep't of Commerce Feb. 25, 2011) ........................................................... 24

76 Fed. Reg. 31301 (Dep't of Commerce May 31, 2011) ..................................................... 21, 25

76 Fed. Reg. 76143 ................................................................................................................... 24

*Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China,*
52 Fed. Reg. 22,667 (Dept. of Commerce June 15, 1987) ...................................................... 16

*Tapered Roller Bearings From the People's Republic of China,*
52 Fed. Reg. 19748 (Dep't of Commerce May 27, 1987) (final determination of sales at less than fair value) ................................................................................................................... 3

**Other Authorities**

"Guide on How to File for an Antidumping/Countervailing Duty Scope Ruling Request,"
https://enforcement.trade.gov/scope/Request-Scope-Ruling.pdf.............................................. 27

HQ H024411 (July 22, 2009).................................................................................................... 34

HTSUS Heading 8483 ............................................................................................................... 34

HTS Heading 8708 .................................................................................................................... 34

HTSUS U.S. Rule of Interpretation 1(c), Note 3 to Section XVII ................................................ 34

NY N117518 (August 27, 2010)................................................................................................. 34

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |  |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00205 |
| | ) | |
| WANXIANG AMERICA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, the United States, respectfully submits this opposition to the motion filed by defendant, Wanxiang America Corporation (Wanxiang), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to United States Court of International Trade (CIT) Rule 12(b)(6), ECF No. 12 (Def. Mot.), and the brief filed in support of that motion, ECF No. 12-1 (Def. Br.).  As we demonstrate below, the complaint pleads factual content that will permit the Court to draw the reasonable inference that Wanxiang is liable for the misconduct alleged therein.  Wanxiang's arguments, which largely go to the merits of the Government's claims, do not detract from the sufficiency and plausibility of the claims and, therefore, Wanxiang's motion to dismiss should be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The United States commenced this case against Wanxiang seeking to enforce a civil penalty assessed by U.S. Customs and Border Protection (CBP or Customs) for Wanxiang's multiple grossly negligent and negligent violations of 19 U.S.C. § 1592(a) in connection with entries made between October 1, 2007, and September 30, 2012.  The violations alleged in our

complaint include Wanxiang's:  (1) negligent misclassification of wheel hub units (also referred to as wheel hub assemblies) incorporating tapered roller bearings (WHA), failure to identify its WHA as being covered by an antidumping order, and failure to deposit applicable antidumping duties, resulting in the loss of $26,939,985.31 in antidumping duties; (2) grossly negligent claim that entries of universal joints were eligible for duty-free treatment under an actual use provision for parts of agricultural machines, resulting in the loss of $20,755.15 in duties; (3) negligent misclassification of parts and accessories of universal joints imported, resulting in the loss of $1,684,404.16 in duties; (4) grossly negligent misclassification of parts and accessories of universal joints after being advised by CBP of the correct classification of these goods, resulting in the loss of $1,889,419.23 in duties; (5) negligent misclassification of radial ball bearings and tapered roller bearings, resulting in the loss of $602,102.32 in duties; and (6) negligent misclassification of miscellaneous parts and accessories, resulting in the loss of $48,542.94 in duties.

The WHA entries that are the subject of the complaint have already been the subject of litigation in both this Court and the United States Court of Appeals for the Federal Circuit in *Wanxiang America Corporation v. United States*, 399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) (*Wanxiang Am. I*), aff'd, 12 F.4th 1369 (Fed. Cir. 2021) (*Wanxiang Am. II*).  To provide additional context to the factual allegations in the complaint, we refer to relevant portions of the Courts' discussion of the factual background and procedural history in *Wanxiang America I* and *Wanxiang America II*.

Wanxiang is a U.S. corporation and an importer for its parent corporation, Wanxiang Group Corporation, an automotive parts manufacturing company in the People's Republic of China.  Compl. ¶¶ 3, 6, 7; *Wanxiang Am. I*, 399 F. Supp. 3d at 1328; *Wanxiang Am. II*, 12 F. 4th

at 1371.  Wanxiang imported goods from Wanxiang Group that were exported from China by two subsidiaries of Wanxiang Group, Wanxiang Import and Export Co., Ltd. (WIE) and Wanxiang Qianchao Co. Ltd. (WQ).  *Wanxiang Am. I*, 399 F. Supp. 3d at 1325; *Wanxiang Am. II*, 12 F.4th at 1371.  This action involves Wanxiang's importations of universal joints and parts thereof (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits), WHA, radial ball bearings, tapered roller bearings, and other parts and accessories of automobiles (including axle, cage for double offset joint of constant velocity axle (CV), race for CV axle used in utility vehicle, CV-joint part, tube assembly, and steering shaft for combine) during the period October 1, 2007, to September 30, 2012.  Compl. ¶¶ 8, 9.

The Department of Commerce (Commerce) first published the antidumping duty order on tapered roller bearings from China on May 27, 1987.  *See Wanxiang Am. I*, 399 F. Supp. 3d at 1327 (citing *Tapered Roller Bearings From the People's Republic of China*, 52 Fed. Reg. 19,748 (Dep't of Commerce May 27, 1987) (final determination of sales at less than fair value) (TRB Order).  From 1994 to 2001, Wanxiang, Wanxiang Group, and WIE participated in Commerce's annual antidumping administrative reviews on Chinese tapered roller bearings.  *Wanxiang Am. I*, 399 F. Supp. 3d at 1327; *Wanxiang Am. II*, 12 F.4th at 1371.  Those administrative reviews covered entries of first-generation WHA that were subject to the 1987 TRB Order.  *Wanxiang Am. I*, 399 F. Supp. 3d at 1327-28; *Wanxiang Am. II*, 12 F.4th at 1371.  As a result of those reviews, Wanxiang Group and WIE were assigned company-specific antidumping duty rates of *de minimus* for the administrative review for the 1995 to 1996 period and a rate of 0% for the periods covering 1996 to 1997, 1998 to 1999, 1999-2000, and 2000 to 2001.  *Wanxiang Am. I*, 399 F. Supp. 3d at 1327 (citations omitted).  In the administrative reviews covering Chinese tapered roller bearing for 1999 to 2000 and 2000 to 2001, Wanxiang Group requested that

3

Commerce rescind the TRB Order as it applied to Wanxiang Group because it had received either a *de minimus* or 0% antidumping duty margin during the preceding three years. *Id*. at 1328. Commerce denied the request and, thus, the TRB Oder remained in force as to Wanxiang Group at the time Wanxiang entered the subject WHA. *Id*. (citation omitted).

Between October 1, 2007, and September 30, 2012, Wanxiang entered the subject WHA that were exported from China by WQ. Compl. ¶¶ 8. These WHA have been referred to as second- and third- generation WHA. *Wanxiang Am. I*, 399 F. Supp. 3d at 1328. Second- and third generation WHA are within the scope of the TRB Order. *Wanxiang Am. II*, 12 F. 4th at 1371 (citations omitted); *see also Power Train Components, Inc. v. United States*, 911 F. Supp. 2d 1338 (Ct. Int'l Trade 2013), *aff'd mem*., 565 F. App'x 899 (Fed. Cir. 2014). WQ, the exporter of the WHA covered by the penalty at issue in this action, had not received a company-specific antidumping duty rate because it did not participate in the reviews. *Wanxiang Am.*, 399 F. Supp. 3d at 1328. The WHA exported from China by WQ and entered by Wanxiang were covered by the TRB Order and were subject to the "all others" deposit and liquidation rate of 92.84%. Comp. ¶ 21.

Notwithstanding Commerce's refusal to rescind the TRB Order as to Wanxiang Group, Wanxiang imported the subject WHA without depositing antidumping duties. Comp. ¶ 22. Upon entry, Wanxiang identified the WHA as "01" consumption entries but because WHA were covered by the TRB Order, the entries should have been identified as "03" antidumping entries. *Id*. at ¶ 23. Wanxiang failed to include the antidumping case number on the entry summary corresponding to the entries of WHA. *Id*. at ¶ 24. Wanxiang also misclassified the WHA as automobile parts under Harmonized Tariff Schedule of the United States (HTSUS) heading 8708. *Id*. at ¶ 26.

In June 2012, CBP initiated an audit of Wanxiang's entries made during the five-year period from October 1, 2007, to September 30, 2012. *Wanxiang Am. II*, 12 F.4th at 1371. The CBP audit was conducted to investigate classification and antidumping issues. *Wanxiang Am. I*, 399 F. Supp. 3d at 1328. Due to the large number of entries that Wanxiang made during the review period, CBP chose to analyze a statistical sample of 100 entries. *Wanxiang Am. II*, 12 F.4th at 1371. In its initial audit results, CBP concluded that WQ's exports of WHA were covered by the TRB Order and subject to the 92.84% PRC-wide antidumping duty rate. *Wanxiang Am. I*, 399 F. Supp. 3d at 1329. Wanxiang responded to the initial audit results and asserted that WQ was entitled to Wanxiang Group's 0% antidumping rate because it was a subsidiary of Wanxiang Group and shared exporting personnel with WIE. *Id*. Wanxiang alternatively maintained, as it argues in its motion to dismiss here, that it had no reason to believe that the newer generation WHA were subject to the TRB antidumping order. *Wanxiang Am. II*, 12 F.4th at 1371 n.1.

CBP issued the final audit results on September 2, 2015, and the agency reiterated that WQ was not eligible for Wanxiang Group's antidumping rate. *Wanxiang Am. I*, 399 F. Supp. 3d at 1329. Thereafter, Wanxiang met with the Secretary of Commerce and the Under Secretary of Commerce for International Trade to request that Commerce review CBP's views. *Id*.; *see also Wanxiang Am. II*, 12 F.4th at 1372. On May 25, 2016, Commerce's Customs Liaison Unit placed a memorandum (CLU Memo) on the record. *Wanxiang Am. I*, 399 F. Supp. 3d at 1329; *Wanxiang Am. II*, 12 F.4th at 1372. The CLU Memo and the documents attached to it provided guidance to CBP regarding the companies covered by Wanxiang Group's 0% rate, and WQ was not one of those entities. *Id*.

On January 17, 2018, CBP issued a pre-penalty notice that advised Wanxiang that CBP was contemplating issuing a demand for duties in the amount of $35,973,268.39 and a penalty in the amount of $77,157,756.08 for violation of 19 U.S.C. § 1592.  Comp. ¶ 51.  On May 23, 2018, Wanxiang filed a complaint in this Court asserting jurisdiction under 28 U.S.C. 1581(i)(2) and (4).  *Wanxiang Am. I*, 399 F. Supp. 3d at 1330; *Wanxiang Am. II*, 12 F.4th at 1373.  Wanxiang alleged that Commerce's Guidance to CBP violated due process and was otherwise contrary to law or unsupported by substantial evidence.  *Wanxiang Am. I*, 399 F. Supp. 3d at 1325.  Wanxiang also argued that it had no reason to believe that its second- and third-generation wheel hub units exported from China by WQ were subject to the TRB Order.  *Wanxiang Am. II*, 12 F.4th at 1373.  We moved to dismiss Wanxiang's complaint for lack of jurisdiction.  *Id*.  The Court granted our motion to dismiss, *id*., and the Federal Circuit affirmed the Court's judgment.  *Wanxiang Am. II*, 12 F.4th at 1375.

On April 11, 2019, CBP issued a notice to Wanxiang assessing a penalty in the amount of $66,190,766.98 for multiple negligent and grossly negligent violations of 19 U.S.C. § 1592, and demanding payment of $31,185,209.11 in lost revenue.  Compl., ¶ 53.  Neither Wanxiang nor any other entity has paid any part of the duties and penalty the United States seeks in this action.  *Id*. ¶ 55.

ARGUMENT

I.    Standard Of Review

A complaint attacked by a Rule 12(b)(6) motion to dismiss "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a complaint must provide the grounds for the plaintiff's entitlement to relief

with more than mere labels and conclusions, or a formulaic recitation of the elements of a cause

of action, it does not need detailed factual allegations. *Twombly*, 550 U.S. at 555 (citations

omitted). Indeed, a plaintiff must allege "only enough facts to state a claim to relief that is

plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* (quoting *Twombly*, 550 U.S. at 570); *see also*, *United States v. Greenlight Organic, Inc.*, 466

F. Supp. 3d 1260, 1263 (Ct. Int'l Trade 2020). Applying the plausibility standard is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679.

In reviewing a complaint, the Court accepts as true all well-pled factual allegations and

draws all reasonable inferences in a plaintiff's favor. *Leider v. United States*, 301 F.3d 1290,

1295 (Fed. Cir. 2002); *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1302 (Fed. Cir.

2012) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 n.13 (Fed. Cir. 1993)).

Although a court primarily considers the allegations as set out in the complaint, it "may also look

to matters incorporated by reference or integral to the claim, items subject to judicial notice,

[and] matters of public record." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed.

Cir. 2015) (internal quotation marks and citation omitted).

II.     The Complaint Pleads Factual Content That Allows The Court To Draw The Reasonable
        Inference That Wanxiang Is Liable For Violations Of 19 U.S.C. § 1592

Under 19 U.S.C. § 1592, no person, by gross negligence or negligence, may enter

merchandise into United States by means of a document, written or oral statement, or act that is

material and false, or any omission that is material. *See* 19 U.S.C. § 1592(a)(1)(A)(i) & (ii). The

complaint, therefore, must allege that (1) a person (2) entered merchandise into the United States (3) by means of a material false statement or omission.  The complaint sufficiently alleges negligent and grossly negligent violations of section 1592.

> A.  The Complaint States A Claim For Relief That Is Plausible On Its Face For Each Of Wanxiang's Negligent Violations Of 19 U.S.C. § 1592

A claim of negligence "arises out of 'an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances in ascertaining the facts or in drawing inferences therefrom. . . .'" *United States v. Ford Motor Co.*, 395 F.Supp.2d 1190, 1207–08 (Ct. Int'l Trade 2005) (quoting 19 C.F.R., Part 171, App. B(B)(1)), *aff'd in part and remanded*, 463 F.3d 1267 (Fed. Cir. 2006).  In connection with negligence claims, the Court has held that the complaint must allege that the importer "entered or introduced, or attempted to enter or introduce, merchandise into United States commerce by means of either (i) a material and false statement, document or act, or (ii) a material omission."  *United States v. Great Neck Saw Mfr.*, 311 F. Supp. 3d 1337, 1341 (Ct. Int'l Trade 2018) (citing *United States v. Maverick Mktg., LLC*, 295 F. Supp. 3d 1349, 1351–52 (Ct. Int'l Trade 2018).  "Nothing more is required."  *Id*. (quoting *United States v. Int'l Trading Servs., LLC*, 190 F. Supp. 3d 1263, 1273 (2016).  *See also United States v. Rotek Inc.*, 22 C.I.T. 503, 513 (1998) ("Here, the Complaint alleges that Rotek negligently made 132 entries of merchandise at various ports by means of false statements and omissions.  This is all that is required to state a claim pursuant to § 1592."); *United States v. Valley Steel Prods Co.*, 12 C.I.T. 1161, 1162 (1988) ("a statute-based claim which adequately pleads elements of the statute satisfies the pleading requirement for purposes of Rule 12(b)(5)."); *United States v. Priscilla Modes, Inc.*, 9 C.I.T. 598, 600 (1985) ("By alleging a violation of 19 U.S.C. § 1592 and the consequent loss of duties, the complaint states a claim upon which relief can be granted.").

Congress requires that every "importer of record," such as Wanxiang, shall exercise "reasonable care" in entering merchandise into the United States.  19 U.S.C. § 1484(a)(1).  In so doing, importers must among other things, "fil[e] with [CBP] such documentation or, pursuant to an authorized electronic data interchange system, such information as is necessary to enable [CBP] to determine whether the merchandise may be released from custody."  19 U.S.C. § 1484(a)(1)(A).  Importers also must "certify[y]" all entries to be "true and correct to the best of [their] knowledge and belief."  19 U.S.C. § 1484(d)(1).  Further, "[t]he entry shall set forth such facts in regard to the importation as the Secretary may require and shall be accompanied by such invoices, bills of lading, certificates, and documents, or their electronically submitted equivalents, as are required by regulation."  19 U.S.C. § 1484(d)(1).

CBP's regulation, at 19 C.F.R. § 142.3, sets forth the required content of what is commonly called an "entry packet."  This includes the "entry summary" or "CBP Form 7501." *Id*.  Additionally, importers must file at the time of entry "evidence of the right to make entry"; a "commercial invoice"; and a "packing list."  *See generally* 19 C.F.R. § 142.3(b)(1).  "The entry summary filed for merchandise subject to an antidumping or countervailing duty order shall include the unique identifying number assigned by the Department of Commerce . . ."  19 C.F.R. § 141.61(c); *see also Wanxiang Am. I*, 399 F. Supp. 3d. at 1328, n.6 (same).

The entry summary serves as the primary commercial entry form.  On CF7501 forms, entry type "01" refers to ordinary consumption entries.  *Wanxiang Am. I*, 399 F. Supp. 3d. at 1328.  Such entries are not treated as antidumping or countervailing duty (type "03") entries and instead are liquidated with the assessment of ordinary customs duties and fees in the ordinary course, absent any suspension of liquidation for antidumping duty purposes.  In contrast, a liquidation of type "03" entries is suspended pending a determination by Commerce of the

amount of antidumping or countervailing duty to assess, if any. *Id.* Commerce makes these determinations retrospectively during review proceedings pursuant to 19 U.S.C. § 1675, so the rate of duty to be assessed is unknown at the time of entry.

Here, the complaint alleges that Wanxiang is a corporation, and that it was the importer of the entries underlying the penalty. Compl., ¶¶ 3, 6-7, 8-9. Therefore, Wanxiang is a person encompassed by section 1592(a). The complaint specifies the categories of goods that Wanxiang entered and alleges that the goods were entered by means of materially false statements or omissions. *Id.* at ¶¶ 8, 9. The complaint further identifies each false statement and its materiality in simple, concise, and direct allegations that together show that we are entitled to relief. Specifically, the complaint alleges that Wanxiang entered WHA exported from China by WQ that were covered by a TRB Order and subject to a deposit and liquidation rate of 92.84%. *Id.* at ¶¶ 15-19, 20-21. The complaint alleges that Wanxiang falsely identified the WHA on the entry summaries as "01" consumption entries when they should have been identified as "03" antidumping entries, failed to include the antidumping case number on the entry summaries, and misclassified the WHA as automobile parts under HTSUS subheading 8708.99.6890 or subheading 8708.99.8180. *Id.* at ¶¶ 22-26. The complaint further alleges that the misclassifications, false identification of the entries as "01" consumption entries, and omission of the antidumping case number on the entry summaries are material because they had the potential to influence CBP's assessment of antidumping duties. *Id.* at ¶¶ 27. The complaint further alleges the injury caused by Wanxiang's material false statements and omissions as being the actual loss of revenue in the amount of $26,939,985.31. *Id.* at ¶¶ 25, 28. Finally, the complaint alleges that Wanxiang's material false statements and omissions in connection with the entry of the subject WHA were negligent. *Id.* at ¶ 61.

Furthermore, for each of the remaining negligence claims alleged in the complaint we also allege the material false statements or omissions constituting Wanxiang's violation of 19 U.S.C. § 1592. *See* Compl. ¶¶ 29-33, 64 (alleging that Wanxiang entered and misclassified radial ball bearings and tapered roller bearing under subheadings under HTSUS heading 8708, the merchandise was properly classifiable as "Ball or roller bearings" under HTSUS heading 8482, the misclassifications were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate statistics, and the misclassifications resulted in an actual loss of revenue); Compl. ¶¶ 34-35, 38-39, 67 (alleging that Wanxiang entered and misclassified universal joints and parts of universal joints under subheadings under HTSUS headings 8708, 8709 or 8483, the misclassifications were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate statistics, and the misclassifications resulted in an actual loss of revenue); Compl., ¶¶ 46-50 (alleging that Wanxiang misclassified miscellaneous parts and accessories under several HTSUS subheadings, the misclassifications were material in that they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate statistics, and the misclassifications resulted in an actual loss of revenue).

"At the motion to dismiss stage, all the complaint must do is ***allege*** a false statement, act, or omission." *Great Neck*, 311 F. Supp. 3d at 1343 (emphasis added). This is what the complaint does here, and there is no requirement that the allegations for negligence or gross negligence be alleged with more particularity. *See* U.S. Ct. Int'l Trade R. 8(a) (providing that a pleading that states a claim for relief must contain a "short and plain statement" of the grounds for the court's jurisdiction, a "short and plain statement of the claim showing that the pleader is

entitled to relief," and (3) a demand for the relief sought, which may include alternative or different types of relief); U.S. Ct. Int'l Trade R. 8(e) (providing that "[e]ach allegation must be simple, concise, and direct"); U.S. Ct. Int'l Trade R. 8(f) (providing that "[p]leadings must be construed so as to do justice").

Taking all the factual allegations in the complaint as true, the Government has sufficiently pled a cause of action for a civil penalty under 19 U.S.C. § 1592 that will permit the Court to make the reasonable inference that Wanxiang is liable for negligence in connection with the entry of the subject merchandise.

B.    The Complaint States A Claim For Relief That Is Plausible On Its Face For Each Of Wanxiang's Grossly Negligent Violations Of 19 U.S.C. § 1592

A claim of gross negligence "arises 'if it results from an act or acts (of commission or omission) done with actual knowledge or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute.'" *Ford*, 395 F. Supp. 2d at 1206 (quoting 19 C.F.R. Part 171, App. B(C)(2)).

Here, the complaint alleges claims of gross negligence that resulted from an act or acts (of commission or omission) done with actual knowledge or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute.  In particular, the complaint alleges that, on July 1, 2009, CBP informed Wanxiang by way of a notice of action that Wanxiang had misclassified an entry of crosses and steering yokes under HTSUS subheading 8432.90.0080, a duty-free provision, and advised Wanxiang that parts and accessories of universal joints, such as crosses and steering yokes, are properly classified in HTSUS subheading 8483.90.8040 at a duty rate of 2.8% *ad valorem*.  Compl., ¶ 36.  The complaint alleges that, following that notice of action, Wanxiang continued to misclassify its entries universal joints and parts and accessories of universal joints under different HTSUS

12

subheadings with duty rates ranging from free to 2.5%. *Id*. at ¶ 37. The complaint further alleges that these misclassifications were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics, and it also alleges that the misclassifications resulted in an actual loss of revenue of $1,889,419.23. *Id*. at ¶¶ 38, 40. Finally, the complaint alleges that Wanxiang's misclassifications were the result of gross negligence, that is a wanton disregard for the relevant facts and indifference to or disregard for statutory obligations. *Id*. at ¶ 70.

The complaint also alleges that Wanxiang entered universal joints into the United States and falsely claimed they were eligible for duty-free treatment as parts of agricultural machines under HTSUS subheading 9817.00.6000, an actual use provision that is subject to the requirements of 19 C.F.R. §§ 10.133 - 10.139. *Id*. at ¶¶ 41, 42. The complaint alleges that Wanxiang was aware of the requirements of sections 10.133 - 10.139 and that the false claims were material because they had the potential to influence CBP's assessment of duties and to adversely affect CBP's ability to collect and report accurate trade statistics. *Id*. at ¶¶ 43, 44. The complaint further alleges that Wanxiang's false claim resulted in an actual loss of revenue of $20,755.15. Finally, the complaint alleges that Wanxiang evinced a wanton disregard for the relevant facts and indifference to or disregard for statutory obligations when it made material false statements that the entries of universal joints were entitled to duty-free treatment under the tariff provision for agriculture machine parts. *Id*. at ¶ 76.

Crediting all the factual allegations in the complaint as true, and drawing all reasonable inferences in our favor, the complaint contains more than sufficient facts to state plausible claims for relief that Wanxiang committed grossly negligent violations of 19 U.S.C. § 1592 when it

misclassified entries of universal joints and parts and accessories of universal joints.[1]

III.   <u>Wanxiang's Arguments Should Be Rejected</u>

Wanxiang contends that the complaint should be dismissed because our allegations do not withstand the evidentiary burden of proof that is required to prevail on the merits.  Def. Br. at 17-18, 19 (citing 19 U.S.C. §§ 1592(e)(3), (4) and *United States v. Nitek Elecs, Inc.*, 844 F. Supp. 2d 1298, 1308 n.9 (Ct. Int'l Trade 2012), *aff'd by United States v. Nitek Elecs, Inc.*, 806 F. 3d 1376 (Fed. Cir. 2015), for the burden of proof required for negligence and gross negligence); Def. Br., 20 (arguing that even accepting the complaint allegations as true, they "do not – and cannot – establish" a violation of section 1592(a)); Def. Br., 38 (arguing the Government cannot prove negligence based on allegations in the complaint); Def. Br., 49 (arguing that the Government has failed to establish a right to the requested relief because it is unable to "prove" a necessary element of the statute); Def. Br., 51 (the facts alleged by the Government are insufficient to "establish" culpability).  Wanxiang's contention is not only irrelevant with respect to whether our complaint states a claim, but it also lacks merit.

We agree that, when an action is brought to enforce a penalty, we must prove both that an entry occurred through the use of a material false statement or omission and that such statement or omission occurred as a result of the alleged violator's culpability.  *See* 19 U.S.C. § 1592(a). We also agree that section 1592(e) provides for *de novo* judicial review of "all issues, including the amount of penalty" in any proceeding to recover a penalty under the statute.  We are not, however, required to "prove" Wanxiang's violations of section 1592 in the complaint.  *See Great Neck*, 311 F. Supp. 3d at 1341; *Maverick Mktg.,* 295 F. Supp. 3d at 1351–52; *Int'l Trading*

---

[1]  Should the Court that the complaint is lacking in factual allegations, the proper course would be to allow the Government to amend the complaint.

*Servs.*, 190 F. Supp. 3d at 1273; *Rotek Inc.*, 22 C.I.T. at 513; *Valley Steel*, 12 C.I.T. at 1162;

*Priscilla Modes*, 9 C.I.T. at 600. *See, e.g., Exergen Corp. v. Wal-Mart Stores, Inc. and S.A.A.T.*,

575 F.3d 1312, 1328, 1329 n.5 (Fed. Cir. 2009) (observing the difference between what is

required at the pleadings stage and the merits stage of an action involving fraud). Rather, as we

have demonstrated above, the complaint must and does contain sufficient factual matter from

which the Court may reasonably infer that Wanxiang is liable for the alleged grossly negligent

and negligent violations of section 1592.

As we demonstrate below, Wanxiang's arguments do not undermine the sufficiency of

the allegations in the complaint; therefore, its motion to dismiss should be denied.

> A.    Wanxiang Has Not Demonstrated That The Complaint Fails To State A Claim
>       That It Negligently Entered WHA Covered By The TRB Order

Wanxiang concedes that its WHA are within the scope of the TRB Order. Def. Br., 7.

However, it contends that it should not be required to pay antidumping duties for the WHA

entries exported from China by WQ. In support of that contention, Wanxiang argues that it

cannot be held liable for negligence as a matter of law because: (1) the filing of the WHA

without identification of an antidumping duty case number and deposit of antidumping duties

were not false statements; (2) there was no legal requirement that it identify its entries as being

covered by an antidumping duty order or to deposit antidumping duties at the time it made its

entries; and (3) Commerce failed to provide it actual notice until December 6, 2011, that the

WHA were within the scope of the antidumping order. Def. Br., 20. Wanxiang's concession

that its WHA are within scope permits the Court to make the reasonable inference that Wanxiang

is liable for negligent conduct outlined in our complaint. The arguments supporting its

contention that it should not be required to pay antidumping duties do not detract from the

sufficiency of the complaint allegations, are not supported by publicly available information, and

prematurely attack the merits of our case.  The arguments contained in Wanxiang's brief place

the Government in the position of responding to supposition and surmise, without the benefit of

evidence.  Although we briefly respond to these arguments (Def. Br. 20-57), the arguments are

irrelevant to a motion to dismiss and concern the merits of case.

        1.          Information Available To The Public Since 1987 Shows That WHA
                          Incorporating Tapered Roller Bearings Were Considered Within The
                          Scope Of The TRB Order

The overarching theme of Wanxiang's brief is that it could not have known that its

entries of WHAs that were filed between June 24, 2011, and November 30, 2011, were subject to

antidumping duties -- that is, it did not learn that its WHA were subject to antidumping duties

until the publication of Commerce's scope determination in the Federal Register on December 6,

2011.  By way of background, Wanxiang states that WHAs were not specifically identified as

being within the scope of the TRB Order.  Def. Br., 21.  It states that there were significant

differences of opinion in the importing community as to whether WHA were within the scope of

the order, and that to quell the confusion, New Trend Engineering filed a request with Commerce

to confirm whether its WHAs were outside the scope of the TRB Order.  *Id*. at 9, 32.  Wanxiang

further states that, upon the initiation of a formal scope inquiry, by notice dated June 15, 2010,

Commerce ***itself*** could not determine whether New Trend's WHAs should be excluded from the

scope of the TRB Order based solely upon New Trend's application.  *Id*. at 9-10.  Moreover,

Wanxiang states that Commerce did not publish its final determination that New Trend's WHA

were within the scope of the TRB Order until December 6, 2011.  *Id*. at 11.  Even then,

according to Wanxiang, the issue of whether WHA were within the scope of the TRB Order

remained hotly contested until the courts settled the matter in *Power Train*.  Therefore,

Wanxiang states that it could not have known that the WHA entries exported from China by WQ

were subject to antidumping duties until Commerce issued a final determination that New

Trend's WHA were within the scope of the TRB Order on December 6, 2011.  With these conclusory statements, Wanxiang suggests that it was excused from (1) accurately describing its WHAs as subject to the TRB Order and (2) paying applicable antidumping duties.  Wanxiang's claims are belied by publicly available information.

Wanxiang's WHAs "meet the physical description of subject merchandise ***as explicitly stated in the Order*** because New Trend's wheel hub assemblies without ABS elements are essentially tapered roller housings with spindles."  *Power Train*, 911 F. Supp. 2d at 1344 (emphasis added).  Importantly, given that Wanxiang's WHAs fell within the explicit physical description of the subject TRB Order's scope, Wanxiang was on notice that its WHAs were within the scope of the TRB Order from the date of issuance of the order in 1987, at the latest. *See Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China*, 52 Fed. Reg. 22,667 (Dept. of Commerce June 15, 1987) (scope included "tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not automotive use . . .").  Wanxiang is presumed to have knowledge of the scope of the TRB Order, 44 U.S.C. § 1507, *see Trans Tex. Tire, LLC v. United States*, 519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021) (citing cases), indeed, its parent and sister companies (Wanxiang Group and WIE) had participated in previous Commerce TRB administrative reviews for covered merchandise that Wanxiang had entered.  Thus, there was no need for Wanxiang "to have been clairvoyant in order to avoid liability," Def. Br. 1, when it entered its WHAs as non-subject goods.

Next, Wanxiang argues that there was no legal duty for it to identify its WHA entries with identification of the TRB Order case number and with the deposit of antidumping duties. Def. Br. at 25-31.  Therefore, it claims that as a matter of law, we cannot prove its negligent

violation of 19 U.S.C. § 1592. *Id*. at 25. In support of this argument, Wanxiang maintains that

"Commerce itself has recognized that importers are not responsible for treating merchandise

within the scope of an order before receiving notice that the agency has issued either a

preliminary or final *affirmative* scope ruling (whichever occurs first)." *Id*. at 25. Wanxiang

continues, stating that "Commerce explained that, absent notice of such an affirmative ruling, an

importer's understanding that both Customs and Commerce viewed the merchandise as not

within the scope was justified[,]" and, Wanxiang suggests that "[*i]t would be unfair to importers*

*and exporters to subject entries not already suspended to suspension of liquidation and*

*possible duty assessment with no prior notice*" because "*when liquidation has not been*

*suspended, Customs, at least, and perhaps the Department as well, have viewed the*

*merchandise as not being within the scope of an order, importers are justified in relying upon*

*that view, at least until the Department rules otherwise.*" *Id*. at 25-26 (quoting *Antidumping*

*Duties; Countervailing Duties; Final Rule*, 62 Fed. Reg. 27,296, 27,328 (Dep't of Commerce,

May 19, 1997) (*Preamble*) (full block quote not copied).

Wanxiang's arguments are incorrect. The emphasized portion of the *Preamble* does not

grant importers the ability to unilaterally remove their products from the scope of an order by

misclassification. Def. Br. 26 (quoting *Preamble*, 62 Fed. Reg. at 27,328) ("when liquidation

has not been suspended, Customs, at least, and perhaps the Department as well, have viewed the

merchandise as not being within the scope of an order, importers are justified in relying upon

that view, at least until the Department rules otherwise.") (emphasis removed). Rather, the

*Preamble* presupposes that CBP has at least scrutinized the merchandise for antidumping duty

coverage and elected not to treat that merchandise as subject by suspending liquidation.

Nowhere does Wanxiang make any such allegation here, nor could it because CBP's audit

triggered the conclusion that Wanxiang had misrepresented its WHA entries as type "01." Wanxiang also had misclassified the WHA entries, Compl. ¶ 26, and as discussed below, that misclassification is also a violation of 19 U.S.C. § 1592.  Therefore, because this is a penalty enforcement action seeking duties that were lost as a result of Wanxiang's violation of 19 U.S.C. § 1592, the cases Wanxiang cites relating to the suspension of liquidation and the retroactive assessment of antidumping duties on entries that were not the subject of a penalty action are inapposite.  *See* Def. Br. 26-30 (discussing *Sunpreme Inc. v. United States,* 946 F.3d 1300 (Fed. Cir. 2020) (*en banc*) (*Sunpreme*), *AMS Associates., Inc. v. United States*, 737 F.3d 1338 (Fed. Cir. 2013), *United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017), *aff'd*, 947 F.3d 794 (Fed. Cir. 2020), *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020), and *Trans Texas*).

Moreover, and contrary to Wanxiang's contentions, Def. Br. 26, 30, the Court's *en banc* decision in *Sunpreme* reinforces CBP's plenary authority to enforce the antidumping duty law at the border.  Wanxiang presupposes that CBP lacks authority to review entries of merchandise and to determine whether those entries are subject to antidumping duties.  Instead, Wanxiang appears to contend that this determination belongs to *importers* alone unless Commerce has initiated a scope inquiry.  *Sunpreme* compels the exact opposite of the result that Wanxiang seeks.  In that case, the unanimous *en banc* Court addressed CBP's enforcement of antidumping and countervailing duty orders on solar products, where CBP was required to resolve *ambiguities* in the scope of the orders at the time of entry to determine whether a particular product should be covered by the orders.  *Id*. at 1316, 1320.  To that end, the Court described the question to be "whether Customs acted within its authority when it initially interpreted the Orders to cover Sunpreme's solar modules and began suspension of liquidation."  *Id*. at 1317.  In resolving this

19

question, the Court explained that "Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders." *Id*. Acknowledging that, "[w]hile Customs may not expand or alter the scope of such orders," the Court explained that CBP's "authority and responsibility to determine whether they apply does not dissipate simply because an order lacks perfect clarity." *Id*. ***Any "other result would significantly limit Customs's ability to perform its statutory role and would encourage gamesmanship by importers hoping to receive the type of windfall that [Wanxiang] seeks here*."** *Id*. (emphasis added).

Indeed, *Sunpreme* had much better facts for the importer than this case, given that the orders' scope was ambiguous regarding coverage of Sunpreme's products. In contrast, CBP merely discovered Wanxiang's misrepresentations regarding imports that were explicitly covered by the scope's plain language during an audit. To that end, Wanxiang's discussion of Commerce' scope regulation in light of *Sunpreme* is inapposite. Def. Br. 30 (contending that a liability on applicable antidumping duties begins when a scope determination has been issued and the importer has received adequate notice of the decision, and assessment of duties before that point "would be impermissibly retroactive") (quoting *Sunpreme*, 946 F.3d at 1319)). This says nothing about CBP's authority to enforce the law. Rather, "Customs is tasked with determining, for every imported product, whether the product falls within the scope of an antidumping or countervailing duty order." *Sunpreme*, 946 F.3d 1320 (citing 19 U.S.C. § 1500(c)). That is all that happened here.

Wanxiang's also misplaces its reliance on *AMS Associates*. Def. Br. 26, 27, 30. As the Court explained in *Sunpreme*, in *AMS*, "Customs originally determined that the goods were not within the scope of the ambiguous order." *Sunpreme*, 946 F.3d 1319. CBP made no such

determination here.  Instead, CBP discovered Wanxiang's misrepresentations during an audit.

Moreover, *AMS* involved the case in which CBP caused merchandise "entered *not* subject to

duties to be retroactively brought within the scope of duty orders."  *Sunpreme*, 946 F.3d 1319.

Here, Wanxiang's WHAs "meet the physical description of subject merchandise *as explicitly

stated in the Order* because [they] are essentially tapered roller housings with spindles."  *Power

Train*, 911 F. Supp. 2d at 1344 (emphasis added).  CBP never "brought" Wanxiang's products

into the scope of the order; the products were always in-scope.

Worse yet, Wanxiang's complaint in *Wanxiang America I* and the arguments that it

pressed in the Federal Circuit on appeal in that litigation, and its motion to dismiss here, suggest

that Wanxiang knew that its Wanxiang Q WHAs were covered by the TRB Order.  According to

Wanxiang, it had been entering WHA from WIE from between 1996 and 2010, and from 2011 to

the time it filed its complaint in 2018.  Case 1:18-cv-00120, ECF No. 5, Compl. ¶ 28.  Wanxiang

stated that Commerce had determined that WIE's exports were entitled to Wanxiang Group's 0%

rate.  *Id*. at ¶ 29.  Wanxiang implies that those WIE WHAs were entered under the TRB Order at

the 0% rate.  Wanxiang further conceded that it could have sought a new shipper review for WQ,

but that it was not required to do so.  *Wanxiang Am. II*, 12 F. 4th at 1374 ("Wanxiang concedes it

could have sought administrative review and then challenged unfavorable results at the CIT

under 1581(c).").  Furthermore, in its motion to dismiss, Wanxiang does not contest that its

imported WHAs fall within the scope of the plain language of the TRB Order and it also does not

appear to contest that WQ had never obtained a separate antidumping duty rate separate and

apart from the China-wide rate.  These statements, arguments, and omissions cannot be

reconciled with a lack of knowledge.

Finally, while Wanxiang discusses the reasonable steps that New Trend took to ascertain whether its WHAs were within the scope of the TRB Order, Wanxiang's brief is silent as to what, if any, steps it took to fulfill its statutory duties.  Specifically, if there was a question in the collective mind of the importing community as to whether WHAs were within the scope of the TRB Order, Wanxiang does not refer to any affirmative action that it took to put the question to rest with respect to the subject entries.  *See United States v. Horizon Prods. Int'l, Inc*., 229 F. Supp. 3d 1370, 1380 (Ct. Int'l Trade 2017) (importer failed provide evidence of steps taken to ascertain the correct classification of merchandise).  Wanxiang does not allege that it applied for a scope determination.  And, as discussed above, even absent a scope determination, there was publicly available information since 1987 that WHAs were TRBs and thus within the scope of the TRB Order.  And, to the extent there may have been a question concerning whether WHA were within the scope of the order after 1987, Commerce published notice in the Federal Register on May 31, 2011, that it had preliminarily determined WHA incorporating TRB were within the scope of A-570-601.  76 Fed. Reg. 31301 (Dep't of Commerce May 31, 2011).  If Wanxiang chose to bury its head in the sand and ignore publicly available information that WHA incorporating tapered bearing were within the scope of the TRB Order, then it is facially plausible that the company failed to exercise reasonable care and, therefore violated 19 U.S.C. § 1592(a), as alleged in the complaint.  *See Greenlight Organic*, 466 F. Supp. 3d at 1263.

    2.  Commerce's Regulation At 19 C.F.R. § 351.225 Is Irrelevant To The Issues Underlying This Penalty Action

Wanxiang improperly concludes that a 19 U.S.C. § 1592 duty demand and penalty is precluded by operation of 19 C.F.R. § 351.225.  Wanxiang argues that where an antidumping order is unclear with respect to the coverage of an article within its scope, the legal obligation to declare imports of that article as subject to the order and liability for any applicable antidumping

duties begins when a scope determination has been issued and the importer has received adequate notice of the decision. Def. Br., 31. In support of this contention, Wanxiang relies upon the Court's decisions in *United Steel*, *Tai-Ao Aluminum*; *Trans Texas*, and *Sunpreme*. *Id*. at 26-29.

Wanxiang's argument that an importer's obligation to declare merchandise as subject to the order begins when it receives adequate notice of the final scope determination is not persuasive. First, by its own reasoning, Wanxiang should have declared its WHA as being subject to antidumping duties because Commerce had provided notice that they were within the scope of the order before the time of entry. Second, the cases that Wanxiang cites in its brief are inapposite. And third, the regulations concerning the suspension of liquidation are inapplicable here.

First, Wanxiang states in its brief that the loss of revenue associated with its failure to declare WHA as being subject to antidumping duties can be isolated to entries filed between June 24, 2011, and November 30, 2011. Def. Br. 2, 7. Next, Wanxiang notes that Commerce did not publish its final determination that WHA were within the scope of the order until December 6, 2011. Def. Br. 11 (citing 76 Fed. Reg. 76143). Wanxiang then concludes, based on the cases it cites and 19 C.F.R. § 351.225, that it could not have known its WHA were subject to antidumping duties before December 6, 2011, and therefore, cannot be liable for duties and a penalty. Wanxiang is incorrect.

On March 5, 2010, New Trend Engineering Ltd. submitted a request for a scope determination that its imports of certain wheel hub assemblies from China are outside the scope of the tapered roller bearing order. *See Power Train,* 911 F. Supp. 2d at 1341; 75 Fed. Reg. 52,311 (Dep't of Commerce Aug. 25, 2010). Commerce first published notice that the request

for a scope determination was pending in the Federal Register on August 25, 2010. Commerce

subsequently published two more notices stating that the requested determination was

pending. 75 Fed. Reg. 79,339 (Dep't of Commerce Dec. 20, 2010) and 76 Fed. Reg. 10,558

(Dep't of Commerce Feb. 25, 2011). Then, on May 31, 2011, Commerce published a notice in

the Federal Register stating that it had made a preliminary ruling in the New Trend Case on

December 13, 2010. 76 Fed. Reg. 31,301 (Dep't of Commerce May 31, 2011). Therefore,

Commerce had published notice that it had made a preliminary determination 24 days before the

first entry Wanxiang contends resulted in a loss of revenue for failing to pay antidumping

duties. Per 19 C.F.R. § 351.225(l), if Commerce issues a preliminary scope ruling that the

product at issue is covered by the scope of the order, the Secretary will direct CBP to begin the

suspension of liquidation and require a cash deposit rate of estimated duties, at the applicable

rate, for each entry of the product not yet suspended, entered, or withdrawn from warehouse, for

consumption on or after the date of initiation of the scope inquiry. Accordingly, Wanxiang's

entries of WHA filed between June 24, 2011, and November 30, 2011, should have been

suspended because Commerce initiated the scope inquiry on June 15, 2010, and made its

preliminary determination on December 13, 2010. There is no question that there was publicly

available information that New Trend had initiated a scope inquiry and that Commerce had made

its preliminary determination before June 24, 2011. *See* 75 Fed. Reg. 52,311 (Dep't of

Commerce Aug. 25, 2010); 76 Fed. Reg. 31,301 (Dep't of Commerce May 31, 2011).

Second, the cases relied upon by Wanxiang are readily distinguishable.

In *United Steel*, Commerce instructed CBP to suspend liquidation of unliquidated entries

of washers retroactively to the issuance of Commerce's initial order in 1993 imposing

antidumping duties. The Court held that Commerce exceeded its authority under 19 C.F.R.

§ 351.225(l)(3) by interpreting the regulation to authorize retroactive suspension of liquidation to the date of Commerce's determination of dumping when issuing a final scope ruling pursuant to 19 C.F.R. § 351.225(d).  203 F. Supp. 3d at 1255.  Those regulations are not at issue here.

*Tai-Ao Aluminum* is an anticircumvention case.  The issue in that case was whether Commerce's notice that it was initiating an anticircumvention case against exporter Zhongwang provided adequate notice to a different importer, Tai-Ao, that their aluminum extrusions would be subject to Commerce's anti-circumvention inquiry resulting in their entries entered on or after the initiation date could be subject to duties.  983 F.3d at 493.  The Court held that the notice did not sufficiently put Tai-Ao on notice that its merchandise would be swept up in the Zhongwang anticircumvention inquiry.  *Id.* at 495.  Here, in contrast, Wanxiang was unquestionably among the importers on notice that WHA were subject to antidumping duties as evidenced by the fact the company participated in Commerce's proceedings related to the merchandise prior to the entries at issue in this case.

The scope order in *Trans Texas* excluded certain on-the road steel wheels that are coated entirely with chrome.  519 F. Supp. 3d at 1294.  But then, in its final determination, Commerce stated for the first time that the exclusion did not extend to wheels finished with other processes, including Physical Vapor Deposition (PVD).  The Court stated:  "Commerce revised the initial scope language to incorporate Dexstar's clarification that the scope exclusion only applies to electroplated chrome steel trailer wheels and not PVD chrome wheels."  *Id.* at 1298.  The Court held that Commerce's decision to assess duties retroactive to the date of the Preliminary Determination was not in accordance with law because the language in the Initiation Notice and Preliminary Determination did not provide adequate notice of the inclusion of PVD chrome wheels.  *Id.* at 1307-1308.  Here, however, the scope of the order has not been revised.

Finally, *Sunpreme* involved solar modules manufactured in China.  *Sunpreme*, 946 F.3d 1305.  Until 2015, Sunpreme entered its modules without declaring them being subject to antidumping duties.  *Id.*  On April 20, 2015, CBP notified Sunpreme that it had decided that Sunpreme's entries were within the scope of the antidumping order for solar modules.  *Id.*  This resulted in suspension of liquidation of Sunpreme's entries and the requirement that the importer pay cash deposits before its shipments would be released.  *Id.*  Commerce subsequently issued instructions to CBP directing the agency to continue the suspension of the modules it had determined to be within the scope of the order.  The Federal Circuit sustained Commerce's determination that the modules were within the scope of the order.  *Id.* at 1307, 1315.  The Federal Circuit also addressed whether Commerce's instructions to CBP, to continue suspension of entries made before the initiation of a formal scope inquiry, were valid.  *Id.* 1315-1316.  The Court held that CBP did not exceed its authority by ordering the suspension of liquidation based on its interpretation of Commerce's orders.  *Id.* at 1317.  In so holding, the Court said that nothing in the statutory scheme suggests that CBP may "simply ignore orders" when it fixes the final amount of duty owed on goods.  *Id.* at 1318.

In *Sunpreme*, unlike here, Commerce had to rely on the more complex factors set out in 19 C.F.R. § 351.225(k)(2) to determine the modules were within the scope of the order.  946 F.3d at 1307.  In marked contrast, in *Power Train*, the Court found that "Commerce's determination that wheel hub assemblies without ABS are within the scope based upon a review of the TRB Order, petition and ITC Report-the (k)(1) Factors-is supported by the record and otherwise in accordance with the law."  911 F. Supp. 2d at 1345.

In short, none of the cases that Wanxiang cites is on point.  Moreover, the Federal Circuit's decision in *Sunpreme* supports the allegations in the complaint that Wanxiang is liable

for antidumping duties on its WHA.  In its decision, the Federal Circuit cautions against importers potentially avoiding paying antidumping duties on past imports by asserting unmeritorious claims that their products fall outside the scope of the original order.  *Id.* at 1319.  And the Federal Circuit stated that suspension of Sunpreme's entries was not unjust because the "goods in question entered subject to duties, have always been subject to duties, and will now continue to be subject to duties."  *Id.*

Third, the line of cases that Wanxiang cites in its brief concern suspension of liquidation under 19 C.F.R. § 351.225 and the decisions are limited to that context.  Again, the relevant inquiry for negligence under 19 U.S.C. § 1592 will be whether Wanxiang made a material false statement.  Thereafter, Wanxiang will have to meet its burden by showing that it exercised reasonable care.  As noted above, there is no evidence that Wanxiang took positive steps to determine if its WHA fell within the scope of the order.

In sum, Wanxiang's arguments that it was not obligated to declare its WHA as subject to antidumping duties because a final scope determination had not been issued are without merit.  Wanxiang should have declared its WHA as being subject to antidumping duties because Commerce had provided notice that they were within the scope of the order ***before*** the time of entry.

        3.      Wanxiang's Assertion That It Should Have Been On The Scope Service List Is Wrong

Wanxiang asserts that the Commerce gave it no direct notice of the scope determination requests filed by other parties in early 2010, as no Wanxiang entity appears on the "comprehensive scope service list" applicable to ADD case number A-570-601 during the period in question.  Def. Br., 23.  Because they did not receive actual notice that Commerce had made a preliminary and then a final determination that WHA were within the scope of A-570-601,

Wanxiang argues that Commerce ignored its own regulations and, as a result, Wanxing could not have known to enter its WHAs as being subject to antidumping duties. This argument goes to the merits and does not relate to the sufficiency of the allegations in the complaint.

Wanxiang would not have been on the scope service list because it did not file its entry of appearance pertaining to antidumping case A-570-601 until May 27, 2016. According to Commerce's "Guide on How to File for an Antidumping/Countervailing Duty Scope Ruling Request," companies should file an entry of appearance. *See* https://enforcement.trade.gov/scope/Request-Scope-Ruling.pdf. Once a company has filed its entry of appearance, Commerce will add it to the shorter public service list for the scope ruling segment. Companies will then begin receiving service copies of documents filed by other interested parties as well as email notifications from Commerce notifying them of its public documents and public versions submitted to the record of the scope segment. As Wanxiang did not file its entry of appearance until May 2016, Commerce would not have known to include Wanxiang in any notifications related to the scope ruling requests submitted prior to May 2016.

Altogether, Wanxiang's arguments that the Government's case must be dismissed because it did not know its WHA were within the scope of A-570-601 are unavailing and do not warrant the dismissal of the complaint. Wanxiang cannot reasonably argue that it was unaware that WHAs were subject to antidumping duties before it entered the WHAs at issue. Wanxiang Group applied for a separate rate for WHA that Wanxiang imported, which Commerce granted on November 17, 1997. 62 Fed. Reg. 61276 (Dep't of Commerce Nov. 17, 1997). And, as we demonstrated above, Commerce had regularly published information in the Federal Register concerning the New Trend scope inquiry before the entries at issue here. *See Suntec Indus. Co.*

*v. United States,* 951 F. Supp. 2d 1341,1352 (Ct. Int'l Trade 2013) (Commerce provided sufficient notice of a proceeding through publication in the Federal Register).

      B.    <u>Misclassifications Constitute False Statements Under The Penalty Statute</u>

The complaint alleges that Wanxiang committed multiple misclassifications in violation of 19 U.S.C. § 1592(a) in connection with entries that it made between October 1, 2007, and September 30, 2012, including:  (1) the negligent misclassification of WHAs; (2) the negligent misclassification of parts and accessories of universal joints imported between October 1, 2007, and July 1, 2009; (3) grossly negligent misclassification of parts and accessories of universal joints entered after CBP instructed Wanxiang of the correct classification of such goods; (4) negligent misclassification of radial ball bearings and tapered roller bearings; (5) grossly negligent misclassification of universal joints as parts of agricultural machinery; and (6) negligent misclassification of miscellaneous parts and accessories.  Compl. ¶¶ 8-9, 29-50.

Wanxiang argues that misclassifications do not constitute false statements of fact under 19 U.S.C. § 1592.  Def. Br. 39-40.  According to Wanxiang, because the complaint does not allege a misstatement regarding the character, nature, or description of the imported merchandise at the time of entry, even if the merchandise was classified under the wrong HTSUS provision, the complaint "cannot" support a claim for either negligence or gross negligence.  *Id*. at 40. Therefore, Wanxiang contends that a misclassification is not a material false statement for purposes of 19 U.S.C. § 1592.  Wanxiang's contention is unsupported and contrary to the law.

Section 1484 of Title 19 sets forth the procedures for the entry of imported merchandise. It requires, among other things, that importers file with CBP "the declared value, classification and rate of duty applicable to the merchandise," and "such other information as is necessary to enable the Customs Service to . . . properly assess duties on the merchandise."  19 U.S.C. §

1484(a)(1)(B).  In accordance with section 1484, Wanxiang was required to provide correct tariff classifications of its merchandise to CBP.  Our complaint alleges that Wanxiang failed to fulfill its obligations under the law.

This Court has determined that "19 U.S.C. § 1592 grants CBP the authority to impose a monetary penalty for tariff misclassification."  *Wanxiang Am. I*, 399 F. Supp. 3d at 1326 (footnote omitted).  The Court has also repeatedly held that a "misclassification" on CBP entry documentation constitutes a material false statement under section 1592.  *See United States v. Cruzin Cooler, LLC*, 459 F. Supp. 3d 1366, 1375 (Ct. Int'l Trade 2020) ("This Court has found that a misclassification of merchandise on Customs' entry documentation establishes a false statement."  (citation omitted)); *United States v. Int'l Trading Servs., LLC*, 222 F. Supp. 3d 1325, 1332 (Ct. Int'l Trade 2017) (where importer misclassified entries of sugar on entry paperwork, misclassification constituted false statement because asserted classification of merchandise in entry paperwork has the tendency to influence CBP's decision in assessing duties); *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1128 (Ct. Int'l Trade 2017) (holding that asserted classification of merchandise in entry paperwork has the tendency to influence CBP's decision in assessing duties and therefore constitutes a material statement under the statute); *United States v. Optrex Am., Inc.*, 560 F. Supp. 2d 1326, 1336 (Ct. Int'l Trade 2008) (finding misclassification amounts to a false statement under section 1592(a) and explaining that "the classification of merchandise as presented in customs entry documentation has the tendency to influence Customs' decision in assessing duties and therefore constitutes a material statement under the statute.").  Finally, the Court has held that the reasonable care standard requires an importer of record to ensure that the merchandise is properly classified.  *United States v. Six Star Wholesale, Inc.,* 359 F. Supp. 3d 1314, 1320 (Ct. Int'l Trade 2019).

30

Notwithstanding that the Court has held that misclassifications on entry papers are material false statements, citing *Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002), Wanxiang argues that it is well-established that a tariff classification is not a "fact" but is a conclusion of law.  Def. Br., 39.  *Franklin*, however, does not support this argument because it does not hold that a tariff classification is not a fact.  Rather, the Federal Circuit held that "[t]he proper scope and meaning of a tariff classification term is a question of law to be reviewed de novo, *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed.Cir.1997), while ***determining whether the goods at issue fall within a particular tariff term as properly construed is a question of fact***, *N. Am. Processing Co. v. United States*, 236 F.3d 695, 697 (Fed.Cir.2001)."  *Franklin*, 289 F.3d at 757 (emphasis added).

> C.   The Allegation That Wanxiang Failed To Comply With The Notice Of Action Is Sufficient To Establish Gross Negligence At The Pleading Stage

The complaint alleges that Wanxiang misclassified universal joints and parts and accessories of universal joints (consisting of crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits) under several different chapters, headings, and subheadings of the HTSUS.  Compl., ¶ 35.  CBP determined that universal joints are specifically described and correctly classified under subheading 8483.60.4080 at 2.8% *ad valorem* and the parts and accessories of universal joints are specifically described and correctly classified under subheading 8483.90.8040 at 2.8% *ad valorem*.  Compl. ¶ 36.  Wanxiang argues that it properly classified these goods under HTSUS heading 8708 as parts and accessories of motor vehicles because the crosses, yokes and other parts of universal joints at issue are designed and used exclusively as parts of automobiles.  Def. Br. 46-47.  Additionally, Wanxiang argues that it did not act with either gross negligence or negligence regarding its tariff classification of universal joints and parts and accessories of universal joints because:  (1) CBP's notice of action did not

require Wanxiang to classify parts of universal joint under HTSUS subheading 8483.90.80; (2) the facts alleged in the complaint are insufficient to "establish" gross negligence; and (3) a bona fide disagreement as to the proper tariff classification of merchandise grounded in a reasonable difference in the interpretation of tariff provisions cannot support a negligence claim. *Id*. at 49-55. Wanxiang's arguments are not supported by the law, do not diminish the sufficiency of the allegations pled in the complaint and, therefore, should be rejected.

The complaint alleges that, on July 1, 2009, CBP informed Wanxiang by way of a notice of action that Wanxiang had misclassified parts of universal joints. Compl. ¶ 36. The notice of action here was an informed compliance interpretive decision that represented CBP's position regarding the classification of parts and accessories of universal joints. *See United States v. Int'l Custom Prods.*, 549 F. Supp. 2d 1384, 1393–94 (Ct. Int'l Trade 2008) (holding in part that a notice of action issued by Customs "was an 'interpretive ruling or decision' within the meaning of" 19 U.S.C. § 1625(c)). Although notified of its misclassifications, Wanxiang continued to incorrectly classify parts and accessories of universal joints. Compl., ¶ 37. As alleged in the complaint, Wanxiang acted with wanton disregard for the relevant facts and indifference to or disregard for statutory obligations. Compl., ¶ 70. Therefore, the complaint states a plausible claim for Wanxiang's grossly negligent violation of 19 U.S.C. § 1592.

Wanxiang argues that even if it could be shown that it misclassified certain auto parts, and that those misclassifications were legally cognizable as false statements under 19 U.S.C. § 1592, its conduct does not rise to the level of gross negligence. Specifically, Wanxiang argues that the notice of action did not require Wanxiang to enter these articles under the HTSUS subheading "suggested" in the notice of action. Def. Br., 50-51. A violation is grossly negligent if it results from an act done with actual knowledge of or wanton disregard for the relevant facts

and with indifference to or disregard for the offender's obligations under the statute.  *United States v. New-Form Mfg. Co., Ltd.,* 277 F. Supp. 2d 1313, 1327 (Ct. Int'l Trade 2003).  While Wanxiang argues that it was not required to follow CBP's classification, the notice of action put Wanxiang on notice that it was misclassifying the merchandise.

The Court's decision in *Sterling Footwear*, a penalty enforcement action involving entries of footwear, is instructive.  As is the case here, CBP had issued a notice of action to the importer identifying the correct HTSUS classification of the imported merchandise.  The importer, however, failed to correct its misclassifications of unliquidated entries, and it also continued to enter footwear under the erroneous classification provision in contravention of the classification directive set forth in the notice of action.  The Court found that the Government met its burden for proving that the defendant's level of culpability constituted gross negligence by showing that after being alerted to misclassifications by CBP in the notice of action, the importer failed to correct its errors and continued to use the incorrect classification in future entries.  *Sterling Footwear*, 279 F. Supp. 3d at 1139 ("[Defendant] failed to correct its errors when pointed out by CBP and, instead, continued to make entries using the incorrect classification.  Plaintiff has demonstrated [defendant]'s gross negligence by a preponderance of the evidence").  In this case, Wanxiang engaged in unlawful conduct after it was warned not to do so.  Therefore, the complaint pleads a plausible claim upon which relief may be granted as to parts and accessories of universal joints.

Furthermore, CBP's position regarding the classification of parts and accessories of universal joints is consistent with law and CBP interpretive rulings and informed compliance publications (ICPs).  Since 1995, CBP's classification of parts of automobile has been guided by the Court's decision in *Mitsubishi Elecs. Am., Inc. v. United States*, 882 F. Supp. 171 (Ct. Int'l

Trade 1995).  In *Mitsubishi,* the Court considered the classification of a part for a starter motor

for an automobile.  *Id.* at 171.  In considering the correct classification, the Court stated, as a

general principle, that parts of articles generally do not fall within an *eo nomine* or use category

unless the category contains a specific provision for parts.  *Id.* at 175-176.  The universal joints

imported by Wanxiang are specifically described, by name, and correctly classified under

subheading 8483.60.4080 as "universal joints," and the parts and accessories of universal joints

are specifically described and correctly classified "parts and accessories" of universal joints

under subheading 8483.90.8040.

  CBP rulings HQ H024411 (July 22, 2009) and NY N117518 (August 27, 2010), confirm

the application of the basic principle articulated in *Mitsubishi*.  In both rulings, CBP concluded

that the merchandise could not be classified more generally as parts of automobiles, but rather,

were properly classified under HTSUS subheading 8483.  Specifically, HQ H024411 relied on

the holding in *Mitsubishi* and HTSUS U.S. Rule of Interpretation 1(c), Note 3 to Section XVII to

conclude that the merchandise was classified under HTSUS heading 8483.  Additionally, CBP's

Informed Compliance Publication entitled "Vehicles, Parts and Accessories under the HTS"

dated February 2011, states that parts and accessories of motor vehicles are classified under HTS

Heading 8708 provided, "They must not be more specifically provided for elsewhere in the

HTS."  ICP at p. 9.  Thus, in addition to not following the classification determination set forth in

the notice of action issued to it on July 1, 2009, Wanxiang ignored the Court's decision in

*Mitsubishi*, CBP's rulings and ICPs, and the relevant terms of the HTSUS, all of which were

publicly available to Wanxiang, when it misclassified its parts and accessories of universal

joints.  Therefore, Wanxiang's claim that its misclassifications represent a *bona fide*

classification dispute should be rejected by the Court.

Wanxiang argues that, even if CBP's assertion that the merchandise should have been classified under HTSUS heading 8483 is found to be correct, it had a reasonable basis to classify the merchandise under heading 8708 and, therefore, it cannot be said that its classification was unreasonable and negligent.  Def. Br. at 53.  Citing to *United States v. Thirty-One Boxes*, Case no. 16,465a, 28 F. Cas. 56 (S.D.N.Y. 1833), Wanxiang states that "because the proper classification of an article is a question of law which reasonable minds may answer differently, Customs and the courts have long recognized that a penalty action is not the proper vehicle for the settlement of a *bona fide* classification dispute."  *Id*.  Wanxiang's claim that misclassifications are tantamount to a professional disagreement should be rejected by the Court, particularly at this stage in the proceedings.  As stated above, Wanxiang could have protested CBP's classification determinations as set forth in the notices of action issued to it, but it did not to do so.

Finally, Wanxiang does not directly challenge the sufficiency of the complaint allegations as to misclassification of entries of radial ball or tapered roller bearings, other miscellaneous parts and accessories of automobiles, or Wanxiang's claim of duty-free treatment for certain parts for agricultural purposes.  As we demonstrated above, the allegations in the complaint permit the Court to make the reasonable inference that Wanxiang made material false statements of fact in violation 19 U.S.C. § 1592 and, therefore, Wanxiang's motion to dismiss should be denied.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Wanxiang's motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Mikki Cottet
MIKKI COTTET
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC  20044
Telephone: 202-307-0962
Facsimile: 202-514-7965
E-mail: Mikki.Cottet@usdoj.gov

*OF COUNSEL*:

STEVEN J. HOLTKAMP
Office of Associate Chief Counsel
U.S. Customs and Border Protection
610 S. Canal St., Ste. 767
Chicago, IL 60607

December 21, 2022

Attorneys for Plaintiff, United States

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |
|---|---|
| THE UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 22-00205 |
| | ) |
| WANXIANG AMERICA CORPORATION, | ) |
| | ) |
| Defendant. | ) |

_____

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION IN THE COURT'S
STANDARD CHAMBERS PROCEDURE**

I, MIKKI COTTET, a Senior Trial Counsel in the Office of the Assistant Attorney
General, Civil Division, Commercial Litigation Branch, am responsible for filing the foregoing
brief, relying upon the Microsoft Word Word-Count feature of the word processing system used
to prepare the brief, certify that this brief complies with the word count limitation of the U.S.
Court of International Trade Standard Chambers Procedures and contains 11,364 words.

/s/ Mikki Cottet

December 21, 2022

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE GARY S. KATZMANN, JUDGE

_____
                                       )
THE UNITED STATES,                     )
                                       )
              Plaintiff,               )
                                       )
       v.                              )          Court No. 22-00205
                                       )
WANXIANG AMERICA CORPORATION,          )
                                       )
              Defendant.               )
_____)

<u>ORDER</u>

Upon consideration of defendant's motion to dismiss, plaintiffs' opposition, and all other

pertinent papers, it is hereby

ORDERED that defendant's motion to is DENIED.

                                  _____
                                  GARY S. KATZMANN, *JUDGE*

Dated: _____, 2022
          New York, New York