UNITED STATES COURT OF INTERNATIONAL TRADE
HON. GARY S. KATZMANN, JUDGE

```
-----------------------------------------------------------------------x
UNITED STATES                                   :
                                                :
                        Plaintiff,              :     Court No. 22-00205
                                                :
              v.                                :
                                                :
WANXIANG AMERICA CORPORATION,                   :
                                                :
                        Defendant.              :
-----------------------------------------------------------------------x
```

**DEFENDANT'S REPLY TO
PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

ROLL & HARRIS LLP
Attorneys for Defendant


By:     /s/ Michael E. Roll
        Michael E. Roll
        1999 Avenue of the Stars
        Suite 1100
        Los Angeles, CA 90067
        Tel: (310) 294-9501


        /s/ Brent Ian Harris
        Brett Ian Harris
        2001 L Street NW
        Suite 500
        Washington, DC  20006
        Tel: (845) 255-1850


Dated: February 3, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ..................................................................... 1

ARGUMENT ......................................................................... 6

    I.    THERE WAS NO LEGAL OBLIGATION TO DECLARE AND
        DEPOSIT ANTIDUMPING DUTIES ON THE SUBJECT WHEEL
        HUB ASSEMBLIES AT THE TIME THE ENTRIES INQUESTION
        WERE FILED ............................................................... 6

        A.    The TRB Order's Language Does Not Clearly and
                Unambiguously Cover WHAs ...................................... 6

        B.    WXA Did Not Misclassify the WHAs to Avoid
                Antidumping Duties.................................................. 10

        C.    Commerce's Failure to Notify WXA of the Existence of
                the New Trend Scope Proceedings Precludes a Finding that
                WXA Had a Duty to Enter its WHA's as Subject to
                Antidumping Duties Prior to Publication of the Results of
                the New Trend Scope Proceedings ................................. 13

        D.    The May 2011 Federal Register Notice Did Not Provide
                WXA With Adequate Notice That WHAs Were Considered
                Within the Scope of the TRB Order ............................... 17

        E.    Where the Scope of an Order Is Ambiguous, Adequate
                Notice Must Be Provided Before the Retroactive Assessment
                of Antidumping Duties (Let Alone Penalties) ...................... 21

    II.   THE COMPLAINT FAILS TO STATE A CLAIM THAT WXA
        VIOLATED 19 U.S.C. §1592 WITH RESPECT TO ITS TARIFF
        CLASSIFICATION OF AUTOMOTIVE PARTS AND
        ACCESSORIES........................................................... 25

        A.    The Government's Complaint Does Not Allege a Single
                Misstatement of Fact by WXA With Regard to the Tariff
                Classification of Its Merchandise, and Therefore the Complaint
                Does Not State a Claim for Relief under 19 U.S.C. §1592 .......... 25

        B.    The Notice of Action Issued by Customs Concerning
                the Tariff Classification of Parts of Universal Joints Cannot
                Form the Basis of a Gross Negligence Claim Under
                19 U.S.C. §1592................................................... 28

CONCLUSION...................................................................... 31

CERTIFICATE OF COMPLIANCE ................................................ 32

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................5, 25

*Atkore Steel Components, Inc. v. United States,*
    313 F. Supp. 3d 1374 (Ct. Int'l Trade 2018) ..........................................................8

*Bausch & Lomb, Inc. v. United States,*
    148 F.3d 1363 (Fed. Cir. 1998)...............................................................................27

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................25

*Camp v. U.S. Bureau of Land Mgmt.,*
    183 F.3d 1141 (9th Cir. 1999) ...............................................................................20

*Carl Zeiss, Inc. v. United States,*
    195 F.3d 1375 (Fed. Cir. 1999)................................................................................4

*Cummins Incorporated v. United States,*
    454 F.3d 1361 (Fed. Cir. 2006)................................................................................4

*Franklin v. United States,*
    289 F.3d 753 (Fed. Cir. 2002).................................................................................27

*Int'l Custom Prods. v. United States,*
    748 F.3d 1182 (Fed. Cir. 2014)........................................................................29, 30

*N. Am. Processing Co. v. United States,*
    236 F.3d 695 (Fed.Cir. 2001).................................................................................27

*N.O.L. v. District of Columbia,*
    674 A.2d 498 (D.C. 1995) (citing *Palsgraf v. Long Island R.R.,*
    248 N.Y. 339, 162 N.E. 99 (1928)..........................................................................2

*Novosteel SA v. United States,*
    284 F.3d 1261 (Fed. Cir. 2002)...............................................................................12

*Palsgraf v. Long Island R.R.,*
    248 N.Y. 339, 162 N.E. 99 (1928)...........................................................................2

*Papasan v. Allain,*
    478 U.S. 265 (1986)................................................................................................25

*Rollerblade, Inc. v. United States,*
    112 F.3d 481 (Fed.Cir.1997)...................................................................................27

*Sunpreme, Inc. v. United States,*
    946 F. 3d 1300 (Fed. Cir. 2020) (en banc)...........................................8, 17, 19, 21

*Suntec Indus. Co. v. United States,*
    951 F. Supp. 2d 1341 (Ct. Int'l Trade 2013) ....................................................19, 20

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
   983 F.3d 487 (Fed. Cir. 2020).................................................................22

*Totes-Isotoner Corp. v. United States*,
   569 F. Supp. 2d 1315 (Ct. Int'l Trade 2008) .......................................28

*TR Int'l Trading Co. v. United States*,
   4 F.4th 1363 (Fed. Cir. 2021) ..............................................................19

*Trans Tex Tire, LLC v. United States*,
   519 F. Supp.3d 1289 (Ct. Int'l Trade 2021) ........................................23

*United States v. Green Planet, Inc.*,
   494 F. Supp. 3d 1356 (Ct. Int'l Trade 2021) .......................................28

*United States v. Int'l Trading Servs., LLC*,
   222 F. Supp. 3d 1325 (Ct. Int'l Trade 2017) .......................................26

*United States v. Optrex Am., Inc.*,
   560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) .......................................27

*United States v. Sterling Footwear, Inc.*,
   279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017) ...........................26, 27, 31

*United Steel & Fasteners, Inc. v. United States*,
   203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017), *aff'd*, 947 F.3d 794
   (Fed. Cir. 2020)....................................................................... *passim*

*Wanxiang America Corp. v. United States*,
   399 F. Supp. 1323 (CIT-2019), *aff'd* 12 F. 4th 1369 (Fed. Cir. 2021).................16

*Wirth Ltd. v. United States*,
   5 F. Supp. 2d 968 (Ct. Int'l Trade 1998), *aff'd*,
   185 F.3d 882 (Fed. Cir. 1999)..............................................................12

**STATUTES**

19 U.S.C. §1516.................................................................................16

19 U.S.C. §1592......................................................................... *passim*

19 U.S.C. §1625.................................................................................29

**RULES**

CIT Rule 12(b)(6) .................................................................................3

**REGULATIONS**

19 C.F.R. §351.102 (2010) ..............................................................15, 16

19 C.F.R. §351.225 (2010) ........................................................... *passim*

**OTHER AUTHORITIES**

*AD Reg Preamble*, 62 Fed. Reg. 27296, 27328 (May 19, 1997) ........................................19

Laurel Duvall, NIS for wood products, entitled "Plywood, Veneered Panels,
    and Similar Laminated Wood," found at https://tinyurl.com/3zy8mfpb ................9

*New York Ruling Letter 818084,* dated February 7, 1996.................................9, 10, 11, 20

*Notice of Determination as to Evasion,* EAPA Investigation 7321 ....................................9

*Notice of Scope Rulings*, 76 Fed. Reg. 31301 (May 31, 2011)................................3, 17, 19

*Proposed Customs Regulations Amendments Relating to Tariff Designation on
    Entry Documents,* 52 Fed. Reg. 36279 (September 28, 1987) .............................30

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From
    the People's Republic of China: Final Results of the Expedited Third
    Sunset Review of the Antidumping Duty Order*, 76 Fed. Reg. 76143
    (December 6, 2011) .................................................................................... passim*

*Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the
    People's Republic of China*, 76 Fed. Reg. 3086, 3087 (January 19, 2011).............7

*Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from
    the People's Republic of China: Preliminary Results of the 2008-2009
    Administrative Review of the Antidumping Duty Order*, 75 Fed. Reg.
    41148 (July 15, 2010) ......................................................................................8

*Tapered Roller Bearings from China*, USITC Publication 4343,
    Inv. No. 731-TA-344 (Third Review) (August 2012) .............................................6

UNITED STATES COURT OF INTERNATIONAL TRADE
HON. GARY S. KATZMANN, JUDGE

------------------------------------------------------------------------x
UNITED STATES                                          :
                                                       :
                        Plaintiff,                     :        Court No. 22-00205
                                                       :
              v.                                       :
                                                       :
WANXIANG AMERICA CORPORATION,                          :
                                                       :
                        Defendant.                     :
------------------------------------------------------------------------x

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

The Government's fatally flawed complaint and opposition to Defendant's motion to dismiss attempt to rewrite indisputable and publicly recorded history and ignore on point case law in the Government's quest for $80 million dollars.  The Government alleges that Wanxiang America Corporation ("WXA") acted negligently by failing to deposit antidumping duties on entries of 2nd and 3rd generation wheel hub assemblies ("WHAs") imported from June to November 2011.  WXA moved to dismiss the Government's complaint because WXA had no duty ***at the time of entry*** to declare WHAs to be subject to the antidumping duty order on tapered roller bearings from China ("TRB Order").  Having no such duty, WXA could not be negligent, and could not violate 19 U.S.C. §1592.

"[T]he foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff.  Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence."  *N.O.L. v. District of Columbia*, 674 A.2d 498, 499,

n.2 (D.C. 1995) (citing *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928)).

This case involves:

> (a)  a TRB Order issued in 1987 that does not clearly and unambiguously state that WHAs were subject to the TRB Order,
>
> (b)  Customs' National Import Specialist's issuance of a 1996 ruling stating unequivocally that WHAs were NOT subject to the TRB Order,
>
> (c)  the Commerce Department stating in 2010 that it itself could not itself resolve whether WHAs were subject to antidumping duties based on the TRB Order plain language,
>
> (d)  WXA importing WHAs (not TRBs) from June to November 2011,
>
> (e)  Commerce ultimately publishing a decision in December 2011 - *the month AFTER WXA imported the WHAs at issue* – which clarified that the TRB Order should be interpreted to include WHAs for antidumping duty purposes – and this was the first public statement to that effect,
>
> (f)  Customs starting, one year later in December 2012, an audit of WXA's imports of WHAs, and
>
> (g)  Customs, in 2015 and nearly three years after the audit started, retroactively applying the December 2011 publication to entries filed in June-November 2011 in a wholly improper attempt to collect $80 million from an importer who was simply following extant published precedent at the time its entries were filed which instructed that WHAs were *not* subject to the TRB Order.

A graphic depiction of this timeline is set forth in **Exhibit A**.  It plainly shows from information in the public record that, from 1987 through December 2011, there was no duty to declare WHAs as subject to the TRB Order.

The Government has not alleged, and cannot prove, <u>any</u> set of facts that would change the dates of entry or somehow create a legal duty on the part of WXA to deposit TRB antidumping duties on 2nd and 3rd generation WHAs during the June to November 2011 time period.  Defendant's motion to dismiss and supporting memo of law, along with this reply brief, conclusively establish that no matter what facts the Government has pled,

or may attempt to plead, Defendant did not violate any laws or duties ***that were in existence at the time of entry***.  Defendant's argument is exactly what CIT Rule 12(b)(6) was created for.

The Government now tries to escape this conclusion with a patently unsupportable fiction – that the TRB Order was clear and unambiguous since 1987 with regard to its coverage of WHAs.  The Government's claim is gutted by (1) the plain text of the TRB Order and (2) prior statements by Customs and Commerce that conflict directly with the Government's argument.  Moreover, both this Court and the Court of Appeals for the Federal Circuit have explicitly held – directly contrary to the Government's arguments here – that the December 2011 Federal Register notice preliminarily determining that WHAs were subject to the TRB Order does *not* mean that "the products were always in-scope." Govt. Br. at 21.  *United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017), *aff'd*, 947 F.3d 794, 803 (Fed. Cir. 2020) ("*US&F")* ("[A] scope ruling does not merely 'confirm' the scope of an antidumping duty order but instead clarifies the unclear scope of the order ***and whether the particular product at issue falls within that scope***.") (emphasis added).

The Government also claims that a hopelessly opaque May 2011 Federal Register notice (*Notice of Scope Rulings*, 76 Fed. Reg. 31301 (May 31, 2011)), not the December 2011 preliminary determination Federal Register scope notice (*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Final Results of the Expedited Third Sunset Review of the Antidumping Duty Order*, 76 Fed. Reg. 76143 (December 6, 2011)), was sufficient to create a legal duty for WXA to declare its WHAs as if they were TRBs for antidumping duty purposes.  This argument also fails

because 1) the May 2011 notice does not state that WHAs are TRBs for antidumping purposes – only that an unspecified decision had been made, and 2) *even if* WXA had filed its own request for a scope determination then, it would have had no legal obligation to enter its WHAs with antidumping duty deposits while its scope determination was pending. In sum, Counts I and II of the Government's complaint must be dismissed because WXA had no legal duty to declare WHAs as subject to TRBs until Commerce published notice of its preliminary scope determination in December 2011. As a matter of undisputable case law, there was no such prior duty.

The Government's claims regarding tariff classification should also be dismissed. The complaint alleges no misrepresentation or omission regarding the character, nature or description of the merchandise utilized by WXA at the time of entry – in other words, allegations regarding the *factual* misstatements made by the importer. Accordingly, the complaint *cannot* support a claim for either negligence or gross negligence under 19 U.S.C. §1592 even if the tariff classifications asserted in the complaint are presumed to be correct. This is because Section 1592 does not penalize wrong legal conclusions – only false *factual* statements, acts or omissions. It is fundamental to customs law that when there are no material factual disputes as to imported articles, "*the classification issue [is] entirely ... a question of law.*" *Cummins Incorporated v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (emphasis added); see also *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 (Fed. Cir. 1999) (classification of undisputed merchandise is entirely a question of law).

Again, the complaint alleges NO such *factual* misstatements or omissions as to the products' tariff classification. It does not assert that WXA misdescribed the subject merchandise on its commercial invoices, omitted relevant factual information regarding

the products from those invoices, or submitted any other material misstatement or omission of *fact* regarding these products when filing the entries in question.  Put simply, the complaint contains no allegation that WXA misdescribed anything factual about its goods (*e.g.*, there are no allegations that WXA described its products as apples when they are oranges).  Rather, each of the classification allegations claims that WXA entered the goods under one tariff provision (generally automobile parts under headings 8708 or 8709, which is factually accurate as to what WHAs are, *i.e.*, parts of motor vehicles), but that these articles are more properly classifiable under a different tariff provision, which is a legal conclusion.  See Cmpl. ¶¶ 29-50.  Again, §1592 does not penalize wrong legal conclusions.  Rather, the statute's plain language only penalizes false *factual* statements, acts or omissions of acts.

The Government fails to address these fatal deficiencies head-on.  Instead, it argues, despite on point case law, that a mere incorrect classification, without more, somehow can constitute a "false statement" under 19 U.S.C. §1592.  Each decision the Government relies on in support of this untenable proposition is easily distinguished because the complaints in those cases, unlike the complaint here, actually alleged misstatements of fact *independent* of the tariff classifications used by the importer.  Because the complaint has not pled any "*factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added), it alleges no false statement, act or omission on the entry paperwork with regard to the tariff classification of WXA's imported merchandise that could potentially support its claim of liability under 19 U.S.C. §1592.  The Government's causes

of action based on allegedly incorrect tariff classifications must therefore also must be dismissed.

## <u>ARGUMENT</u>

I.   **THERE WAS NO LEGAL OBLIGATION TO DECLARE AND DEPOSIT ANTIDUMPING DUTIES ON THE SUBJECT WHEEL HUB ASSEMBLIES AT THE TIME THE ENTRIES IN QUESTION WERE FILED.**

   A.   **The TRB Order's Language Does Not Clearly and Unambiguously Cover WHAs.**

Our initial brief explained that the articles imported in the entries at issue are <u>not</u> TRBs.  Defendant's Motion to Dismiss ("Def. Br.") at 8-9.  See, generally, *Tapered Roller Bearings from China*, USITC Publication 4343, Inv. No. 731-TA-344 (Third Review) (August 2012), at 13-14, I-28-I-30.  This is important because this case does ***not*** involve WXA importing and failing to pay antidumping duties on TRBs.

The Government's entire case for Counts I and II of its complaint rests upon the fanciful and unsupportable premise that WHAs "were considered within the scope of the TRB Order" since 1987 and are "explicitly covered by the scope's plain language."  Gov't Br. at 16-22.  Based on that newly invented fiction, the Government contends that WXA had a legal obligation to declare and deposit antidumping duties on its importations of WHAs *at the time of entry*.  Gov't Br. at 17 ("Wanxiang was on notice that its WHAs were within the scope of the TRB Order from the date of issuance of the order in 1987, at the latest.") and 21 (". . . the products were always in-scope.").

These claims wither under the slightest scrutiny.  Consider first the plain language of the **entire** scope section of the China TRB Order that the Government claims "explicitly covers" WHAs:

6

> [i]mports covered by the order are shipments of tapered roller bearings and parts thereof, finished and unfinished, from the PRC; flange, take up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use.  These products are currently classifiable under Harmonized Tariff Schedule of the United States ("HTSUS") item numbers 8482.20.00, 8482.91.00.50, 8482.99.15, 8482.99.45, 8483.20.40, 8483.20.80, 8483.30.80, 8483.90.20, 8483.90.30, 8483.90.80, 8708.99.80.15 and 8708.99.80.80.  Although the HTSUS item numbers are provided for convenience and customs purposes, the written description of the scope of the order is dispositive.

*Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China*, 76 Fed. Reg. 3086, 3087 (January 19, 2011).[1]  The TRB Order does ***not even mention WHAs, much less explicitly describe them***.

*Moreover, the 2nd and 3rd generation WHAs here at issue did not even exist in 1987*.  Therefore, they could not have been covered by the TRB Order.  Instead, Commerce had to interpret the TRB Order decades later and reach a conclusion as to whether the WHAs were "in scope" or not.  It was not until the  month after the final shipment upon which the Government's claims are based that Commerce finally published its "in scope" decision.

The 2nd and 3rd generation WHAs were ***not*** explicitly and unambiguously covered by the TRB Order for two additional dispositive reasons.  First, Commerce itself said so.  As set forth in our opening brief, Commerce specifically stated on June 15, 2010, *in a proceeding concerning which it failed to serve notice on to WXA, despite being legally required to do so*, that "it cannot determine whether . . . WHAs should be excluded from the scope of the Order."  Commerce made a similar statement again on July 15, 2010, when it published a Federal Register notice with the preliminary results of the 2008–2009

---

[1] The language in the original order is virtually identical except it speaks in terms of the TSUS rather than the HTSUS since the 1987 TRB Order entered into effect prior to the adoption of the HTSUS in 1989.

Administrative Review of the AD Order.  See *Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China: Preliminary Results of the 2008-2009 Administrative Review of the Antidumping Duty Order*, 75 Fed. Reg. 41148 (July 15, 2010) ("*because the Department has not yet determined whether WHAs are covered by the scope of the order on TRBs*, the Department will continue to base its antidumping margin calculation on New Torch's original U.S. sales database, which does not include WHAs.") (emphasis added).  If the language of the TRB Order alone had unambiguously covered WHAs, surely *Commerce* would have reached that conclusion in its analysis given the multiple opportunities it had to do so.[2]

Second, and perhaps most damaging to the Government's argument is that Customs PUBLICLY DETERMINED that WHAs are **_NOT_** covered by the TRB Order.  The Government's brief relies heavily on *Supreme, Inc. v. United States*, 946 F. 3d 1300 (Fed. Cir. 2020) (en banc) for the proposition that Customs has "plenary authority to enforce the antidumping duty law."  Gov't Br. at 19.  We agree—but this truism does not help the Government's case a whit.

---

[2]  The fact that Commerce and the courts ultimately determined that some WHAs were within the scope of the TRB Order based upon an analysis of the sources listed in §351.225(k)(1) also is *per se* proof that the language of the order is ambiguous.  See, e.g., *Atkore Steel Components, Inc. v. United States*, 313 F. Supp. 3d 1374, 1380 (Ct. Int'l Trade 2018).  See also *US&F*, 203 F. Supp. 3d at 1254 (Ct. Int'l Trade 2017), *aff'd*, 947 F.3d 794 (Fed. Cir. 2020).  In addition, as explained in our initial brief, the fact that Commerce commenced a formal scope inquiry with regard to this merchandise under 19 C.F.R. §351.225(e) is likewise *prima facie* evidence that the merchandise in question is *not* unambiguously within the scope of the TRB Order.  Initiation of a formal scope inquiry indicates "that the issue of whether a product is included within the scope of an order or a suspended investigation *cannot be determined* based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section."  19 C.F.R. §351.225(e) (emphasis added).

In fact, Customs exercised its plenary authority and publicly stated that WHAs like the ones at issue here were **outside** the scope of the order.  In 1996, Customs' National Import Specialist (NIS) responsible for antifriction bearings, Karl J. Riedl, issued New York Ruling Letter (NYRL) 818084 (a matter of public record, a copy of which attached as **Exhibit B**).  Importantly, the role of the NIS is that of Customs' subject matter expert concerning the tariff classification of specific commodities.  In addition, the NIS "[r]eview AD/CVD scopes for administrability and conformance with the Harmonized Tariff Schedule of the U.S. (HTSUS)."[3]  The NIS position "carries with it the ability to make **_authoritative_** pronouncements pertaining to whether [] products are in or out of scope."[4]

NYRL 818084 concerned a "double flanged wheel hub assembly" that "resembles, and functions equivalent to, a third generation tapered roller wheel hub bearing for use on the drive wheels of an automobile."  NIS Riedl, concluded:

> It is the opinion of this office that the subject wheel hub assemblies would **_not_** be subject to antidumping duties under the current Department of Commerce investigation on tapered roller bearings from China, as published in the Federal Register on June 15, 1987.

Emphasis added.  In other words, Customs' NIS read the *exact same scope language* that the Government here asserts "explicitly covered" the WHAs, but publicly reached the opposite conclusion.  As a matter of law, this fact alone precludes any possibility of determining that WXA acted negligently.

---

[3]  See public presentation of Laurel Duvall, NIS for wood products, entitled "Plywood, Veneered Panels, and Similar Laminated Wood," page 4, found at https://tinyurl.com/3zy8mfpb.

[4]  See EAPA Case 7321, Notice of Determination as to Evasion, June 29, 2020 found on Customs' website at https://tinyurl.com/zs2uet4r at 6, FN45.

From 1996 until December 6, 2011, *no Government agency published a decision contrary to NYRL 818084*.  During the course of the scope ruling proceeding Commerce stated - ***but not publicly to those outside of the scope proceedings, such as WXA*** - that it was not clear whether the TRB Order covered WHAs.  In the administrative review of the TRB Order, Commerce had said it not yet reached a decision as to whether WHAs were subject to the TRB Order.  ***After*** Commerce published in the <u>Federal Register</u> its preliminary WHA scope determination in December 2011, and ***after*** WXA had filed its subject entries in accordance with NYRL 818084, Customs, in December 2012, initiated its audit of WXA.  Customs ultimately decided three years later, in 2015, that WXA should have entered its WHAs as subject to antidumping duties *prior to* the December 2011 <u>Federal Register</u> notice.  Because December 2011 is after the date of the entries at issue, and because the only public interpretation of the TRB Order by the Government that existed at the time of the entries was the 1996 issued NYRL 818084 (which stated WHAs were outside the scope of the TRB Order) it is impossible to conclude, ***as a matter of law***, that WXA had a duty to declare WHAs as subject to the TRB Order prior to December 6, 2011.  Counts I and II of the Government's complaint are doomed by this indisputable history. They must be dismissed.

**B.      WXA Did Not Misclassify the WHAs to Avoid Antidumping Duties**

The Government alleges that WXA has §1592 liability for antidumping duties because WXA mischievously "misclassified" the entries of WHAs listed in Attachment A. Cmpl. ¶26.  The Government argues that WXA misclassified these products to "unilaterally remove [them] from the scope" of the TRB Order and that CBP "discovered Wanxiang's misrepresentations regarding imports that were explicitly covered by the scope's plain

language during an audit." Gov't Br. at 18-19. According to the Government, WXA "misclassified the wheel hub assemblies entered under cover of the entries identified on Attachment A as automobile parts under Harmonized Tariff Schedule of the United States (HTSUS) heading 8708, in either subheading 8708.99.6890 or subheading 8708.99.8180." Cmpl. ¶26. These arguments are wrong.

First, in at least *ten* different administrative rulings issued by Customs prior to and contemporaneously with the entries identified on Attachment A, Customs itself classified WHAs *in these exact tariff provisions*.[5] Copies of these public record rulings, each issued by the Customs NIS responsible for tariff classification of bearings, are attached as **Exhibit C**. These rulings make clear that WXA was not misclassifying its merchandise. One of these rulings explains that a WHA "has been advanced to the stage where it is considered a wheel hub assembly rather than a wheel bearing," (NY 855471 (September 10, 1990)). Another of these rulings – NY N018286 (November 2, 2007) – explicitly *rejects* the classification that the Government now contends is the correct one, HTSUSA subheading 8482.10.5016. Indeed, in NYRL 818084, NIS Riedl stated that the correct tariff classification for the WHAs was as an automobile part under HTSUS subheading 8708.99.8080 (which is how WXA classified its WHAs), *not* as a tapered roller bearing (as the Government now claims). These rulings all demonstrate that the classification utilized by WXA with regard to its WHAs cannot, as a matter of law, constitute negligence. The rulings also demonstrate conclusively that WXA did not misclassify its WHAs in order to

---

[5] The numbering of the tariff provision in question has changed slightly over the years to accommodate new subheading and statistical breakouts, but the coverage remains the same.

avoid paying antidumping duties, but instead properly classified its WHAs according to existing administrative precedent.

Moreover, a tariff classification used by an importer is irrelevant as to whether goods are covered by the scope of an antidumping duty order.  As stated in the text of the TRB Order itself (and in virtually all other Commerce antidumping and countervailing duty orders), "[a]lthough the HTSUS item numbers are provided for convenience and customs purposes, the written description of the scope of the order is dispositive."  The precedents of this Court and the Court of Appeals have consistently so held.  See, *e.g.*, *Novosteel SA v. United States*, 284 F.3d 1261, 1270 (Fed. Cir. 2002) and *Wirth Ltd. v. United States*, 5 F. Supp. 2d 968, 877-978 (Ct. Int'l Trade 1998), *aff'd*, 185 F.3d 882 (Fed. Cir. 1999). Thus, whether the Government now thinks WXA misclassified its WHAs is completely irrelevant to whether they were within the scope of the TRB Order and cannot support a conclusion that WXA was negligent in its entry of WHAs without deposit of antidumping duties.

Indisputably, WXA did not "unilaterally" remove the WHAs from the scope of the TRB Order - nor did Customs "discover" WXA's "misrepresentations," as the Government characterizes this case.  Rather, Customs impermissibly and ***retroactively*** applied the TRB Order to entries filed before Commerce had published notice that it had determined WHAs were covered by the TRB Order.   Contrary to the Government's unfounded description of WXA's conduct as a "misrepresentation," in fact, WXA represented its products in a factually accurate way and fully consistent with Customs' conclusions ***that were public and available at the time of entry***.

12

**C.     Commerce's Failure to Notify WXA of the Existence of the New Trend Scope Proceedings Precludes a Finding that WXA Had a Duty to Enter its WHA's as Subject to Antidumping Duties Prior to Publication of the Results of the New Trend Scope Proceedings**

When various parties unrelated to WXA filed scope ruling requests with Commerce in early 2010, Commerce failed to notify WXA of those proceedings; nor did Commerce otherwise inform WXA that Commerce regarded WHAs as being within the scope of the TRB Order.  *To fail to provide such notice to WXA and to then say that WXA had a legal duty to import its merchandise in accordance with the outcome of a proceeding about which WXA was NOT notified, not only makes a mockery of Commerce's regulations at 19 C.F.R. §351.225,[6] but also ignores any notion of fundamental fairness*.

Subsection (n) of Section 351.225 provides that Commerce must establish a "scope service list" that "will include **_all persons_** that have participated in **_any segment_** of the proceeding." (emphasis added).  These regulations further provide that an application for a scope ruling "**_must_** be served upon all parties on the scope service list."[7] (emphasis added).  Moreover, the regulations state that Commerce: (1) **_will_** notify all parties on the Department's scope service list if a scope ruling is issued based upon the (k)(1) factors,[8] (2) **_will_** notify the parties of the initiation of a scope inquiry,[9] (3) **_will_** notify the parties of the issuance of a preliminary scope ruling (including an invitation to comment),[10] and

---

[6]   All references are to the 2010-2011 version of Commerce's regulations.

[7]   19 C.F.R. §351.225(c).

[8]   19 C.F.R. §351.225(d).

[9]   19 C.F.R. §351.225(e).

[10]   19 C.F.R. §351.225(f)(3).

(4) ***will*** notify the parties of the issuance of a final scope ruling (including an explanation of the factual and legal conclusions on which the final ruling is based).[11]

The Government ignores all four of these clearly stated due-process based regulatory mandates and seeks to rely instead on a Commerce website (https://enforcement.trade.gov/scope/Request-Scope-Ruling.pdf) to explain and justify why Commerce failed its legal obligation to include WXA on the service list of multiple relevant scope proceedings. This is a bridge much too far.  Not only does the Government fail to even address the clear regulatory text (and leaving aside the obvious rule that a website cannot change a regulatory requirement), the website the Government heavily leans on did not even exist in 2010-2011.  Instead, it was first published in 2016 – more than five years after the relevant scope proceedings and entries at issue:

---

[11] 19 C.F.R. §351.225(f)(4).



The Government argues, based on the 2016 created website, that "Wanxiang would not have been on the scope service list because it did not file its entry of appearance pertaining to antidumping case A-570-601 until May 27, 2016." Gov't Br. at 28. This is worse than utter nonsense. Commerce's regulations in existence during the 2010-2011 time period do not say "serve those who file an entry of appearance." The regulations state that Commerce is to include those on the scope service list who participated in ___**any**___ segment of the proceeding and to serve them with any initiation of a scope inquiry, as well as any preliminary and final decisions.

Section §351.102 specifically states (in part) that a "'segment of a proceeding' refers to a portion of the proceeding that is reviewable under section 516A of the Act."

The Government admits that "[f]rom 1994 to 2001, Wanxiang, Wanxiang Group, and WIE participated in Commerce's annual antidumping administrative reviews on Chinese tapered roller bearings."[12]  Gov't Br. at 3.  The results of these administrative reviews were reviewable under 19 U.S.C. §1516a.  Thus, by the Government's own admission, WXA and its related parties indisputably participated in "segments" of the proceeding pursuant to 19 C.F.R. §351.102.  Commerce was legally required to place all of those entities on the scope service list and give them notice of the scope proceedings involving WHAs – yet Commerce failed to do so.

The direct result of this omission was that WXA's due process rights were violated. Had Commerce followed its regulation, WXA could have participated in the proceedings or, at the very least, known of their existence and modified its WHA supply chain accordingly (as noted in *Wanxiang America Corp. v. United States*, 399 F. Supp. 1323 (CIT-2019), *aff'd* 12 F. 4th 1369 (Fed. Cir. 2021), WXA was legally able to import TRBs and WHAs through another one of its affiliates with a zero antidumping duty rate).  The Government tries to dismiss this lack of notice as irrelevant to this motion to dismiss because it "goes to the merits and does not relate to the sufficiency of the allegations in the complaint."  Gov't Br. at 28.  To the contrary, it goes to the very heart of the negligence claim.  Absent a legal duty to declare and deposit antidumping duties on WHAs – a duty that is established under the consistent precedents of this Court only when a scope determination has been issued *and the importer has received adequate notice of the decision* – there can be no negligence under 19 U.S.C. §1592.  In other words, without adequate notice there is no legal duty, and without legal duty there is no negligence.

---

[12] WXA's participation in those proceedings was not for the products at issue here.

**D.** **The May 2011 <u>Federal Register</u> Notice Did Not Provide WXA With Adequate Notice That WHAs Were Considered Within the Scope of the TRB Order.**

As explained earlier, when an antidumping duty order is ambiguous, the legal obligation to declare imports of an article as subject to the order and liability for any applicable antidumping duties begins only when a scope determination has been issued *and* the importer has received adequate notice of the decision.  Assessment of antidumping duties prior to this point "would be impermissibly retroactive . . ." *Sunpreme*, 946 F. 3d at 1319.  Here, adequate notice of such a scope determination with respect to WHAs did not occur until December 6, 2011 – the date when Commerce published a <u>Federal Register</u> notice first advising the public that it had determined WHAs to be within the scope of the TRB Order.  The Government attempts to create an earlier duty in this case based on a May 31, 2011 <u>Federal Register</u> notice.  Gov't Br. at 22.  However, this publication is hardly a model of clarity that informs importers as to their duties and obligations.  See **Exhibit D** to this Reply Brief (containing copy of the May 31, 2011 notice).

First, contrary to the Government's deceptive assertion, this notice does ***not*** state that Commerce "had preliminarily determined WHA incorporating TRB were within the scope" of the TRB Order.  Gov't Br. at 22.  The ***entirety*** of the May notice in the New Trend proceeding, as relevant here, is five words:  "preliminary ruling December 13, 2010;" it does not state what had been decided (consistent with its listed status as "pending").  That is, it does not say WHAs were within the scope of the TRB Order *or* outside the scope of the TRB Order.[13]  Such language contrasts starkly to the information

---

[13]  Only one other scope inquiry of the 18 listed in the "Pending" section of this notice includes the same language – a request by Stork Craft Manufacturing concerning the scope of the antidumping duty order applicable to wooden bedroom furniture from China.

provided in the COMPLETED  section of the notice.  Each of the determinations in the "completed" section ***clearly*** states whether the article in question "is within the scope" or "is not within the scope" of the applicable antidumping duty order.

Second, the New Trend scope proceeding is one of 18 separate cases listed under the overall heading of "Scope Inquiries ***Pending*** as of December 31, 2010" (emphasis added).  The term "**pending**" literally means "not yet decided."[14]  Also undecided as of that date and included in the list of the 18 pending scope inquiries were two *other* scope determination requests covering WHAs from China – one requested by Blackstone OTR LLC and one by Bosda International (USA) LLC.[15]  Tellingly, the Government does not attempt to explain why a preliminary result reached in one of these three cases – i.e., the New Trend proceeding – should somehow establish a legal duty on the part of WXA to enter its goods as subject to the TRB Order when conclusions in the other two cases regarding nearly identical merchandise remained undecided.

The May 2011 notice is wholly unlike the December 6, 2011 notice and the contrary 1996 Customs ruling.  Both of these published decisions made ***clear*** statements regarding the scope issue.  The December 6, 2011 notice said WHAs ***were subject to the TRB Order*** in each of these three separate cases – Blackstone, New Trend and Bosda – with unequivocal language (e.g., "wheel hub assemblies are included in the scope of the

---

Although likewise indicating "preliminary ruling December 13, 2010," a review of the public record shows that the preliminary determination reached by Commerce in *that* case was that the articles in question were *outside* the scope of the relevant order.

[14]  See https://www.merriam-webster.com/dictionary/pending.

[15]  Despite the existence of three separate scope inquiries concerning WHAs, Commerce did not notify WXA of ***any*** of these proceedings despite a legal duty to do so under 19 C.F.R. §351.225.

order.").   The 1996 Customs ruling said they were ***not subject to the TRB Order***. Commerce certainly knows and knew how to give clear notice – even in the same May 31st Federal Register notice.  When it wanted to communicate that products in other cases were ruled to be in scope or not, it explicitly stated as much.[16]  An opaque notice concerning one of three "pending" cases involving WHAs, that was not provided by Commerce to WXA as legally required, hardly constitutes sufficient notice of a determination that legally *required* WXA to begin entering *its* WHAs as subject to antidumping duties in direct contradiction of Customs' published position.

According to the Government, Commerce's other Federal Register publications, such as those announcing the initiation of the scope inquiries, should also be deemed sufficient notice to require WXA to start entering its WHAs as subject to the TRB Order. Gov't Br. at 28, citing *Suntec Indus. Co. v. United States*, 951 F. Supp. 2d 1341, 1352 (Ct. Int'l Trade 2013).  However, these Federal Register notices are likewise insufficient to give notice regarding the duty to declare antidumping duties because they did not say that

---

[16] Nor did the publication of this notice on May 31, 2011 somehow create a new legal duty on the part of WXA to file its own scope determination request covering WHAs.  As explained by the Federal Circuit, "under the *Sunpreme* framework, Customs makes initial determinations regarding whether goods are subject to an order, even if there is some ambiguity involved in the order's application.  *If an importer disagrees with Customs' determination*, the proper remedy is for the importer to seek a scope inquiry from Commerce, the result of which may subsequently be challenged before the [Trade Court]." *TR Int'l Trading Co. v. United States*, 4 F.4th 1363, 1369 (Fed. Cir. 2021) (internal citations and quotations omitted, emphasis added).  Here, WXA *did not disagree* with Customs' 1996 determination that WHAs were outside the scope of the TRB Order.  Both *Sunpreme* and the Commerce preamble to the antidumping duty regulations cited with approval by this Court in *US&F* thus dictate that any ambiguity in the scope of an antidumping duty order is to be resolved in favor of the importer unless and until there is a Customs or Commerce determination holding otherwise.  Moreover, even if WXA filed its own scope ruling, it would not have been required to deposit antidumping duties until Commerce issued a preliminary determination on WHAs *to WXA*.  *AD Reg Preamble*, 62 Fed. Reg. 27296, 27328 (May 19, 1997).

WHAs were determined to be TRBs for purposes of the TRB Order. Moreover, even if *any* of these <u>Federal Register</u> notices clearly contradicted the only publicly available ruling by the Government (NYRL 818084) that WHAs were ***not*** subject to the TRB Order, Commerce was required by law to provide *actual* notice of the scope proceedings to WXA under 19 C.F.R. §351.225. Under these circumstances, notification of a legal duty via <u>Federal Register</u> notice is insufficient as a matter of law.

In *Camp v. U.S. Bureau of Land Mgmt.*, 183 F.3d 1141, 1145 (9th Cir. 1999), for example, the Bureau of Land Management ("BLM") was charged with an undisputed legal duty by the applicable regulation to send *actual* notice of the "proposed land transaction" to the plaintiffs and provide notice through publication in the <u>Federal Register</u>. Like Commerce here, the BLM published a <u>Federal Register</u> notice concerning the particular land transaction, but failed to provide the actual notice required by the regulation. The Ninth Circuit found the <u>Federal Register</u> notice "insufficient in law."[17] This reasoning applies with equal force here. Commerce had an undisputed legal duty to include WXA on the scope service list and to send *actual* notice of the scope proceedings to WXA under 19 C.F.R. §351.225. Commerce's failure to do so cannot be cured by publication of an opaque, cryptic reference in the <u>Federal Register</u>. This is *especially* true here, where the Government is seeking nearly $80 million in duties and penalties from WXA resulting from its alleged failure to act in accordance with that defective notice.

---

[17] See *Suntec*, 951 F. Supp. 2d at 1352, n.8.

E.   **Where the Scope of an Order Is Ambiguous, Adequate Notice Must Be Provided Before the Retroactive Assessment of Antidumping Duties (Let Alone Penalties).**

Again, where an antidumping duty order is ambiguous with respect to the coverage of an article within its scope, the legal obligation to declare imports of that article as subject to the order and liability for any applicable antidumping duties only begins when a scope determination has been issued *and the importer has received adequate notice of the decision*. Assessment of antidumping duties prior to this point "would be impermissibly retroactive . . ." *Sunpreme*, 946 F. 3d at 1319.

On this crucial question, the decisions of this Court and the Court of Appeals are **_all_** in accord. See pages 26 to 30 of our opening brief. The Government does not cite a *single* case in support of its efforts to assess retroactive duties *and* penalties against WXA for entries filed before the company had notice that Commerce finally had determined that WHAs were within the scope of the TRB Order. It also fails to offer the Court a principled legal basis for distinguishing *any* of the cases cited above. For example, the court rulings in *US&F* held that Commerce's determination that merchandise was covered by the pre-defined scope of an order did *not* grant the Government authority to retroactively suspend liquidation and require cash deposits before the Plaintiff was first put on notice of that decision. The Government does not question this holding, but simply requests the Court to ignore it because the case concerned the Commerce regulations governing retroactive suspension of liquidation. Gov't Br. at 25. This is a distinction without a difference: the Government's efforts in this case – just like the effort struck down in *US&F* – would result in the assessment of duties *and penalties* against WXA before the company had notice that its products were within the scope. As a matter of policy and consistency of the rule of

law, it makes no sense to *prohibit* the Government from retroactively suspending liquidation in order to assess antidumping duties before adequate notice was given to the importer, but *permit* the Government to achieve the same result here through 19 U.S.C. §1592 and the penalty process.  A ruling in the Government's favor here will allow Customs to do by §1592 what the courts have said it cannot do by retroactive suspension of liquidation. Nor can the incongruous result the Government seeks be squared with due process.

Similarly, *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020), held that Commerce could not suspend liquidation and assess antidumping and countervailing duties on entries made on or after the date of the Initiation Notice in an anticircumvention inquiry, but could only do so with respect to entries filed on or after Commerce *published notice of its Preliminary Determination in the* <u>*Federal Register*</u> *eight months later*.  The *Tai-Ao* court explained that this "notice requirement reflects 'the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" *Tai-Ao*, 983 F.3d at 495, internal citations omitted.

The Government here does not (and cannot) dispute the result in *Tai-Ao* or the basic principle of fairness upon which it is based.  Rather, it claims – misleadingly – that the Court should not apply this legal principle to WXA because "Wanxiang was unquestionably among the importers on notice that WHA were subject to antidumping duties as evidenced by the fact the company participated in Commerce's proceedings related to the merchandise prior to the entries at issue in this case."  This is simply false as

a matter of public record, and the Government knows it.[18]  The Commerce proceedings in which WXA and its related companies participated in the 1990s and early 2000s involved ***tapered roller bearings, not WHAs***.  As explained above, these are completely different products.  *None* of those earlier proceedings involved WHAs.

Similarly, this Court's decision in *Trans Tex Tire, LLC v. United States*, 519 F. Supp.3d 1289 (Ct. Int'l Trade 2021), held that countervailing duties could not be assessed before the plaintiffs in that case first received notice that their goods were covered by the scope of the order, even though liquidation of the plaintiff's entries of those goods had been suspended before that date.  According to the Court, it was not fair for importers to be assessed countervailing duties before they were provided clear or meaningful notice by Commerce that the scope language had been clarified to include their merchandise.  Likewise, it would not be fair for WXA to be assessed antidumping duties before it was provided clear or meaningful notice on December 6, 2011 that Commerce had clarified the scope of the TRB Order to include WHAs.[19]  The only rationale the Government offers this Court to avoid application of the *Trans Tex* holding in this case is that "here . . . the scope of the order has not been revised."  Gov't Br. at 25.  It is difficult to understand why that distinction should be relevant.  Whether the scope in question is clarified through a change in the language of the order or the issuance of a scope ruling, the legal effect is the

---

[18]  The Government's argument here is both incorrect and self-defeating.  Given its admission that the company participated more than a decade earlier in previous Commerce proceedings involving the TRB Order, it necessarily follows that the company should have been on the scope service list.

[19]  The very function of a scope determination is to clarify scope language.  See *US&F*, 947 F.3d. at 803 ("[A] scope ruling does not merely 'confirm' the scope of an antidumping duty order but instead clarifies the unclear scope of the order and whether the particular product at issue falls within that scope.").

same – an ambiguous order has been clarified, and it would be unfair to hold importers liable for the assessment of antidumping duties before they had notice of that clarification.

Commerce failed to notify WXA of the scope proceedings involving WHAs and now Customs blames WXA for not having known about them.  Since Commerce did not notify WXA of the existence of the ongoing scope proceedings, the earliest possible *constructive* notice date creating a legal obligation to declare entries of such merchandise to be subject to antidumping duties would have been **_December 6, 2011_** – the first date on which Commerce published notice in the <u>Federal Register</u> of its administrative decision on this issue.

The Government has not alleged, and cannot prove, <u>any</u> set of facts that would change the dates of entry or somehow create a legal duty on the part of WXA to deposit antidumping duties on WHAs before December 6, 2011 – especially given that during this period of time Customs *itself* interpreted the language of the TRB Order to exclude WHAs from its scope during this time.  Because the allegations in the complaint, even if proven, cannot establish any right to recovery of antidumping duties under these facts, there is no possibility that the defendant has acted unlawfully and its motion to dismiss the claims alleging unpaid antidumping duties and associated penalties should therefore should be granted.

II.     **THE COMPLAINT FAILS TO STATE A CLAIM THAT WXA VIOLATED
        19 U.S.C. §1592 WITH RESPECT TO ITS TARIFF CLASSIFICATION OF
        AUTOMOTIVE PARTS AND ACCESSORIES.**

A.     **The Government's Complaint Does Not Allege a Single Misstatement
        of *Fact* by WXA With Regard to the Tariff Classification of Its
        Merchandise, and Therefore the Complaint Does Not State a Claim for
        Relief under 19 U.S.C. §1592.**

To survive a motion to dismiss, a complaint must plead "*factual* content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged," *Iqbal*, 556 U.S. at 678 (emphasis added).  The Court is not "bound to accept as
true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007), *quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Yet, this is
precisely what the Government asks this Court to do with respect to its tariff classification
claims.

The Government's complaint alleges that WXA misclassified the articles at the
time of entry, and that these incorrect classifications resulted in lost revenue to the
Government.  See Cmpl. ¶¶ 29-50.  The purportedly incorrect classifications, *standing
alone,* are alleged to constitute the "false statements and omissions" justifying the
assessment of penalties pursuant to 19 U.S.C. §1592 in Counts Three through Nine of the
complaint.  Cmpl. ¶¶ 63-83.  The complaint, however, contains no *factual* allegations
whatsoever that WXA (1) misdescribed the subject merchandise on its commercial
invoices, (2) omitted relevant factual information regarding the products from those
invoices, or (3) submitted any other material misstatements or omissions regarding these
products when filing the entries in question.

The Government's complaint does not allege **_any_** dispute regarding the nature of
the merchandise in this case.  Its allegations of incorrect tariff classifications, *without more*,

25

cannot possibly constitute "factual content" in a complaint or "false statements" that could support liability under 19 U.S.C. §1592 under any circumstances.

There may be times, of course, when a factual dispute concerning imported merchandise can affect its tariff classification.  This is not one of them.

For example, *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017), concerned an alleged misclassification of certain footwear.  According to the complaint in that case, the goods at issue were originally classified under a provision covering footwear with uppers of rubber or plastic that specifically excluded products with foxing or foxing-like bands.  The complaint alleged, however, that the footwear at issue was misclassified because, in fact, it had textile uppers and a foxing-like band.[20]

Similarly, *United States v. Int'l Trading Servs., LLC*, 222 F. Supp. 3d 1325, 1332 (Ct. Int'l Trade 2017) concerned the importer's tariff classification of certain sugar products under HTSUS General Note 15 – a provision restricted to goods with specific physical characteristics – among other things, blended syrups, imports for the personal use of the importer of a certain quantity, etc.  Thus, *in addition to* alleging the incorrect tariff classification, paragraph 21 of the complaint in that case made the specific factual claim that "[t]he merchandise at issue in this case does not meet the description in General Note 15 and is not appropriately entered pursuant to its provisions."[21]

The Government makes no similar factual allegations in its complaint in this case, and offers none in its motion opposing the Defendant's motion to dismiss.  Therefore, its

---

[20]  See docket entry #2 in the Court of International Trade's CM/ECF system for Case 1:12-cv-00193-MAB, ¶13.

[21]  See docket entry #2 in the Court of International Trade's CM/ECF system for Case 1:12-cv-00135-MAB.

reliance upon the language it selectively quoted from *Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002), *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed.Cir.1997) and *N. Am. Processing Co. v. United States*, 236 F.3d 695, 697 (Fed.Cir. 2001) for the proposition that "whether the goods at issue fall within a particular tariff term as properly construed is a question of fact" is wholly irrelevant and unavailing here.

The Government cites to, and quotes from, *Int'l Trading Services*, *Sterling Footwear*, and *United States v. Optrex Am., Inc.*, 560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) to support its position that the use of a different tariff provision, without more, can constitute a "false statement" under 19 U.S.C. §1592. Section 1592 does not state that a person can be liable for misclassifying a good. Instead, it states that a person can be liable for making materially false statements, acts or omissions – not legal conclusions – when they enter or attempt to enter merchandise. "Determining whether imported merchandise has been properly classified under an appropriate tariff provision is ultimately an issue of statutory interpretation and thus a question of *law*." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (emphasis added). Allowing the Government's case to proceed, when it has not pled any false factual statements, acts or omissions, but only what it claims is a false legal conclusion, would amount to a judicial rewriting of §1592 to cover the declaration of wrong legal conclusions.

The cases cited by the Government all relate to the *materiality* of the tariff classification. This is reflected in the very descriptions of the cases the Government chooses to use in its brief (*e.g.*, "asserted classification of merchandise in entry paperwork has the tendency to influence CBP's decision in assessing duties and therefore constitutes a material statement under the statute."). Gov't Br. at 30. As explained in our initial brief,

it is well established that in order for §1592 liability to apply to an entry, there must be proof of:

1.    a false statement, act or omission that is also
2.    material, and
3.    culpable (*i.e.*, occurred as a result of the party's negligence, gross negligence or fraud)

See, *e.g.*, *United States v. Green Planet, Inc.*, 494 F. Supp. 3d 1356, 1359-60 (Ct. Int'l Trade 2021).  The Government's arguments regarding the tariff classification improperly conflate the first two of these statutory elements.  While the tariff classification of imported goods is almost always material – a point that WXA does not dispute – it is also always a legal conclusion that cannot constitute a "false" statement without additional, independent allegations that relevant *factual* information regarding the merchandise in question was misdescribed or omitted.   The Government's complaint contains no such factual allegations, and therefore it does not state a claim to relief that is plausible on its face – *i.e.*, a claim that allows the Court to draw the reasonable inference that WXA is liable for a violation of 19 U.S.C. §1592 with regard to the tariff classification of its merchandise.  *See*, *e.g.*, *Totes-Isotoner Corp. v. United States*, 569 F. Supp. 2d 1315, 1325 (Ct. Int'l Trade 2008).

> **B.    The Notice of Action Issued by Customs Concerning the Tariff Classification of Parts of Universal Joints Cannot Form the Basis of a Gross Negligence Claim Under 19 U.S.C. §1592.**

The complaint alleges that, on July 1, 2009, CBP informed WXA by way of a Notice of Action that the company had misclassified parts of universal joints in entry number BZF-6007509-5.  Compl. ¶ 36.  Based upon this Notice of Action – covering one specific entry – the Government alleges that WXA had a legal duty to enter *future*

shipments of this merchandise in accordance with the classification set forth in the notice, and its failure to do so constitutes gross negligence under 19 U.S.C. §1592.  Compl. ¶70.

This is incorrect. "Notices of action are intended to serve as entry-specific notifications." *Int'l Custom Prods. v. United States*, 748 F.3d 1182, 1187 (Fed. Cir. 2014). The July 2009 Notice of Action in this case – upon which the Government's *entire* claim of gross negligence rests – explicitly states as much ("[t]he merchandise on line 001 *of this entry* was misclassified under 8432.90.0080 . . . .") (emphasis added).  The document does not purport to establish a classification for these products for future shipments.  The decisions in *Int'l Custom Prods.* held that a Notice of Action can, under limited circumstances, constitute an "interpretive ruling or decision" within the meaning of 19 U.S.C. §1625(c)), intended to change the classification of such products on a *prospective* basis.  However, the Notice of Action in that case was only given such effect because "it resulted from the considered deliberations of the OR&R," and explicitly stated that it "applied to all" pending and future entries of white sauce.  *Int'l Custom Prods.*, 748 F.3d at 1188 (quoting the Notice of Action at issue there as stating "[a]ll shipments" of white sauce "must be classified" under the dairy spreads heading).[22]  The Notice of Action in *this* case contains no such language.

It is for this very reason that Customs had previously *rejected* a proposal to amend its regulations to require importers who had received a Notice of Action regarding the tariff classification of an imported article to provide that classification on the CF-7501 for *subsequent* shipments as stated in the written notice (See *Proposed Customs Regulations*

---

[22] The Court of Appeals in *Int'l Custom Prods.* explicitly rejected the Government's claim in this case that every Notice of Action is considered an "interpretive ruling or decision" with prospective effect.  *Int'l Custom Prods.*, 748 F.3d at 1189.

*Amendments Relating to Tariff Designation on Entry Documents*, 52 Fed. Reg. 36279 (September 28, 1987) (copy attached as **Exhibit E**).  Specifically, the proposed regulation read, in relevant part, as follows:

> (e)(2)(i)(A) *Classification information – importer*.  If the person filing the [entry] form is an importer, and that importer receives [a Notice of Action], from a Customs official of the Customs designation of the duty/statistical reporting number for the specific merchandise, the importer shall record only that number in the designated location on the form for the merchandise subject to the notice *and any other entries of identical merchandise*.
>
> * * * *
>
> (e)(5)(ii) *Penalty procedures; when invoked*.  A failure to comply with the requirements of paragraph (e)(2)(i) of this section shall not be considered to be an act in good faith, and may subject the person to a claim for monetary penalty under section 592, Tariff Act of 1930, as amended (19 U.S.C. 1592).
>
> (emphasis added).

*This proposal was never adopted*.  To allow the Notice of Action issued to WXA in this case to form the basis of a penalty claim would thus permit Customs to implement a new legal requirement indirectly when it explicitly chose *not* to do so directly, and would be contrary to the above-noted rejection of such a requirement by the Court of Appeals in *Int'l Custom Prods*.  In addition to a violation of the notice and comment procedures required under the Administrative Procedure Act, such a result would violate WXA's due process rights.

It is clear based upon this regulatory history that there was no legal duty to enter prospective shipments in accordance with a Notice of Action at the time the entries in this

case were filed.[23]  Absent such a legal duty there can be no negligence or gross negligence under the law.

## **CONCLUSION**

For the reasons stated above, we respectfully request that the Court dismiss this action with prejudice because Plaintiff has failed to state, and cannot state, a claim upon which any relief can be granted.

Dated: February 3, 2023

Respectfully submitted,
ROLL & HARRIS LLP
Attorneys for Plaintiff

By:   /s/ Michael E. Roll
Michael E. Roll
1999 Avenue of the Stars
Suite 1100
Los Angeles, CA 90067
Tel: (310) 294-9501

/s/ Brent Ian Harris
Brett Ian Harris
2001 L Street NW
Suite 500
Washington, DC  20006
Tel: (845) 255-1850

---

[23]  The Government's reliance upon this Court's decision in *Sterling Footwear* for the contrary conclusion is misplaced.  According to the decision in that case classified its goods "*without regard to the styles of footwear being imported*" and repeatedly misdescribed the footwear.  *Sterling Footwear*, 279 F. Supp. 3d at 1139.  Under those facts, the two Notices of Action issued to Sterling, standing alone, did not establish the importer's gross negligence – rather, it was Sterling's indifference to its obligation to correctly describe the footwear and its continued classification of those goods under a tariff provision that was facially inapplicable.  That is far from the case here.

UNITED STATES COURT OF INTERNATIONAL TRADE
HON. GARY S. KATZMANN, JUDGE

```
------------------------------------------------------------------------x
UNITED STATES                                    :
                                                 :
                         Plaintiff,              :        Court No. 22-00205
                                                 :
              v.                                 :
                                                 :
WANXIANG AMERICA CORPORATION,                    :
                                                 :
                         Defendant.              :
------------------------------------------------------------------------x
```

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION IN THE COURT'S STANDARD CHAMBER PROCEDURES

I, Michael Roll, of Roll & Harris, LLP, am responsible for filing the foregoing reply brief, relying upon the Microsoft Word-Count feature of the word processing system used to prepare the motion, certify that this motion complies with the word count limitation of the U.S. Court of International Trade Standard Chamber Procedures, as amended by this Court's January 30, 2023 Order enlarging the word count for Defendant's brief to 9,000 words, and contains 8,927 words.

/s/Michael Roll

February 3, 2023